Drake, Oh. J.,
delivered the opinion of the court:
This suit is brought to recover the amount of a drawback on machinery exported from the United States, on which an internal-revenue tax had been paid; and the claim is based upon section 171 of the Act of June 30,1864 (13 Stat. L., 223, 302, ch. 173), section 20 of the Act of July 13, 1866 (14 Stat. L., 98, 153, ch 184), and the regulations made under the authority of the former of those sections. To a proper understanding of the questions involved, it is necessary to give the material parts of those sections and regulations.
Section 171 of the Act of June 30, 1864. enacts as follows:
“That * *■ * there shall be an allowance or drawback on all articles on which any internal duty or tax shall have been paid, * * * equal in amount to the duty or tax paid thereon, and no more, when exported, the evidence that any such duty or tax has been paid to be furnished to the satisfaction of the Commissioner of Internal Revenue by such person or persons as shall claim the allowance or drawback, and the amount to be ascertained under such regulations as shall be prescribed * * * by the Commissioner of Internal Revenue, under the direction of the Secretary of the Treasury.”
In section 20 of the Act of July, 13, 1866, it is enacted—
“That in any port of the United States in which there'is more than one collector of internal revenue, the Secretary of the Treasury may designate one of said collectors to have charge of all matters relating to the exportation of articles subject to tax under the laws to provide internal revenue; and at. such ports as the' Secretary of the Treasury may deem it *296 necessary there shall' be an officer appointed by him to superintend ail matters of exportation ami drawback, under the direction of the collector.”
The following, omitting the forms, is a summary of the material parts of the regulations adopted in relation to the subject-matter embraced in those two sections.
I. To entitle the exporter to the allowance or drawback provided for in the sections above quoted, be must, at least six hours previous to lading on board any vessel or other conveyance for exportation any of the articles intended to be exported by him, on which he shall desire to claim a drawback of internal-revenue taxes, file with the collector of the customs for the district from which such exportation is to be made a notice in duplicate setting forth his intention to export the articles described therein, the place where deposited, the name of the vessel or other conveyance in or by which, and the port or place to which, the same are intended to be exported, which notice will be given in the following form, viz: Form A.
II. On the receipt of this notice in duplicate, the collector or his deputy will issue an order for examination and shipment, in duplicate, and attach the same to the notice and forward the original and duplicate papers to the surveyor, which order will be in the following form, viz: Form B. The notice for shipment and order for examination will be delivered, in duplicate, to the inspector detailed by the surveyor to attend to the shipment, and it shall be his duty to execute said order promptly.
III. After the return of lading, and at any time within ten days after the clearing of the vessel having the merchandise on board, the exporter must file with the collector of customs an entry, in duplicate, of the merchandise described in the notice of shipment and return of lading, and an affidavit, in duplicate, of the exporter, according to Forms D and E.
IY. When the foregoing forms shall have been executed, the collector of customs' will transmit without delay to the superintendent of exports the original of each of said forms, together with his own certificate in duplicate, in the form following, viz: Form F.
Y. The exporter, or the party entitled to the drawback, shall, within sixty days after the clearing of the vessel or other conveyance on which the merchandise was laden, file with the superintendent of exports a bill of lading for the merchandise *297 named in tbe entry, and a certificate in duplicate from the collector of internal revenue to whom the tax was paid; and also an affidavit, in duplicate, from the manufacturer or jmoducer of the merchandise on which the drawback is claimed, which certificate and affidavit will be in the following forms, viz: Forms G- and H.
YI. Within a reasonable time, varied according to the distance of the port of destination, and before the transmission by the superintendent of exports of the foregoing proofs for examination, the exporter, or the party entitled to the drawback, must file with said, superintendent a landing certificate * * * in the following form, viz: Form P.
VII. Upon receipt of the landing certificate by the superintendent of exports, he will, if the same is found to agree with the entry (Form D) and remaining proofs of shipment, issue a certificate of the amount of drawback due, and, retaining the landing certificate and the duplicates of Forms F, G-, and H in his office, he will transmit a complete set of original proofs, except the landing certificate, to the Commissioner of.Internal Bevenue. Said certificate will be in the following form, viz: Form I.
VIII. The evidence will be reviewed by the Commissioner of Internal Bevenue, and if, on examination, he shall find the same satisfactory, he will award the amount due the claimant.
The case arising under these statutory provisions and regulations may be briefly stated as follows:
On the 18th of October, 1867, Morgan, Orr & Co., of Philadelphia, entered into a written contract with Clemente Torretti, of the State of Bolivia, South America, to construct for him a quantity of machinery.
The value of the machinery, when completed, was $31,585; upon which Morgan, Orr & Co. paid a five per cent, internal-revenue tax, amounting to $1,579.25.
The claimant, residing in New York, was Torretti’s agent, to receive there the machinery, as it should be sent forward .to his care, and to ship it thence to Torretti.
In April, May, and June, 1868, Morgan, Orr & Co. sent parts of the-machinery to the claimant, which were shipped by him on four different vessels; which were cleared from the port of New York on April 23, May 5 and 16, and June 4, 1868.
In connection with each of those shipments, the claimant in *298 his own name, and styling himself “Exporter,” took measures to claim a drawback on the internal-revenue tax, which had been paid by Morgan, Orr & Co. To that end, he complied with all the requirements of the above regulations, down to and including the delivery, as to each shipment, by the collector of customs, to the superintendent of exports, of the certificate designated as Form F, which certificates bore date, respectively, May 9, 11, 18, and 27, June 29, and July 28,18C8.
This certificate of the collector of internal revenue of the payment of the tax, and the affidavit of Morgan, Orr & Co., in conformity with Forms G and H, were not filed “ within sixty days after the clearing of the vessels ”; for they both bear date October 31, 1868; when, as above shown, the last clearance of any of those vessels was on June 4.
From October 31,1868, till January 19,1880, a period of more than eleven years and two months, there does not appear to have been any movement whatever on the part of the claimant to prosecute his claim for drawback. On that day he wrote the following letter:
“New Yoeii, Jamlary 19í7¿, 1880.
"M. B. Blake, Esq.,
“ Collector,U. 8. Internal Revenue, 2d JDist. New York:
" Deae Sie : In the month of October, 1867, there was contracted for by me in Philadelphia 591 packages of machinery, & some were shipped per Panama B. B. Co.’s vessels in 1868, to Aspinwall, marked A. Y. La Paz, care E. G. Q. Arica. The tax on same was paid June 25th, 1868, $1,579-^, being 5% on $31,585-/$)-, its total value, but as I can only find entries completed in all the required forms entitling me to drawback to the amount of $888-^-, I can only present my claim in accordance, viz:
Entry No. 2107, American Eagle, April 23, 1868. $100 00
“ “ 2120, ■“ “ “ “ “ 122 75
" “ “ . 128 32
“ “ “ “ “ 46 25
“ “ “ “ . 193 00
“ “ 2193, “ “ 16th,- “ . 159 50
“ 2207, Magdalena, “ 27th, “ . 138 18
$888 00
* * # * #
“ I respectfully beg that you will take action upon such of my entries as are complete, to the end that I may receive the *299 amount clue me upon that portion of my claim for drawback (that is complete).
“ I am, dear sir, respectfully, yours,
“D. H. B. Dayis,
“ 30 So. William St., N. TP
The result of this letter was, that on the 22d of January, 1880, Collector Blake signed, and directed to the Commissioner of Internal Revenue, in conformity with the regulations, a certificate, on Form I, as to each of said shipments; and on the 8th of March ensuing the Commissioner allowed the whole of the claimant’s demand, and signed the following certificate: <
No. 21426.] “ Treasury Department,
“Office of Internal Bevenite,
"Washington, March 8t7¡,.1880.
“ This is to certify that there has been filed in this office the evidence required by the regulations of the Secretary of the Treasury, on the subject of drawback, showing that the internal-revenue duties have been paid on the following described merchandise, viz: 376 cases machinery and castings, as specified in the accompanying drawback entries $2107, 2120, 2152, 2167, 2171, 2193, and 2207 ; and that the same were duly exported from the port of New York, and conditioned that the same be not relanded within the United States.
“And I do further certify that D. H. B. Davis, of New York City, is entitled to an allowance or drawback thereon, amounting to eight hundred & eighty-eight dollars, as provided by the 171st section of the excise law approved June 30, 1864.
“ $888. $
“Green B. Baum,
“ Commissioner.
“To I-Ion. Jacob JEL Ela,
“Fifth Auditor of the Treasury.”
The Fifth Auditor stated an account in favor of the claimant for the amount of the Commissioner’s award, but the First Comptroller disallowed the claim.
The claimant then sued in this court, basing his right of recovery solely on the Commissioner’s decision and allowance; which, the petition alleges, “ were in all respects legal and proper P The controversy is connected «with this allegation. If that officer acted within the scope of his lawful authority, as it was a case where the law gave him the right and power to decide and adjudge, it would clearly come within the re *300 peated decisions of this court and of the Supreme Court of the United States, that an adjudication against the government, by an officer authorized by law to make it, establishes a liability on the part of the government to pay, unless it be impeached for fraud or mistake. (Kaufman’s Case, 11 O. Cls. It., 659 ; 96 U. S. R., 567 ; Beal Fstate Savings Bank’s Case, 16 O. Cls. K., 335; Barnett’s Case, id., 515.)
But if, on the other hand, the Commissioner’s action was beyond the pale of his lawful authority, it can form no basis for any recourse against the government, here or elsewhere.
Hence the first question to be examined here is, whether a case was so presented to the Commissioner as to give him jurisdiction to make the decision and allowance on which the claimant rests his right to recover.
In giving such a decision that officer was in the exercise of an extraordinary power, under special statutes and regulations prescribing the occasion and mode of its exercise; and no presumption arises in favor of his jurisdiction; on the contrary, the facts which give him jurisdiction must affirmatively appear, or his proceedings will be held illegal and void. (Thatcher v. Powell, 6 Wheat., 119; Walker v. Turner, 9 id. 541; Haney v. Tyler, 2 Wall., 328; Green v. Haskell, 24 Me., 180; Bridge v. Ford, 4 Mass., 641; Hall v. Howd, 10 Conn., 514; Snediker v. Quick, 1 Green, 306; Bridge v. Bracken, 3 Chand., 75; Fire-baugh v. Hall, 63 Ill., 81.)
In this case we have before us all the documents and facts pertaining to the Commissioner’s action, and therefore need not have difficulty in determining whether that action was within his jurisdiction.
In the first place, as we held in Campbell’s Case (12 C. Cls. B., 470) so we hold here, that a drawback is a mere gratuity, proffered by the government, imposing no obligation on the government until the exporter’s right thereto is ascertained and established in the manner prescribed by law; and that not until after all the preliminary steps and acts have been taken and done in accordance with law and regulations can a claimant’s right to the drawback become established.
The claimant, by the production of, the Commissioner’s certificate of allowance, presents a prima facie case as to all the facts necessary for his decision, except as to his jurisdiction. On that point it is the duty of the court to inquire whether all *301 the preliminary proceedings required by the regulations were duly taken in order to confer jurisdiction on him ; and if it appear that any of them was not so taken, the certificate is valueless as a basis for a judgment against the government.
As before stated, the claimant here appears to have taken all the steps and done all the acts required by the regulations, down to and including the filing with the superintendent of exports of the certificate of exportation designated as Form F; and the Commissioner evidently proceeded upon the assumption that, after the filing of that paper with the superintendent, the regulations had been fully complied with, when, as is apparent on the face of the record, they had not been.
The regulations required the exporter, or the party entitled to the drawback, within 60 days after tlie clearing of the vessel on which the merchandise Avas laden, to establish the payment of the tax, by filing with the superintendent of exports a certificate, in duplicate, from the collector of internal revenue to whom the tax was paid; and also an affidavit, in duplicate, from the manufacturer of the merchandise on which the drawback is claimed.
These documents are in the record, but, as before stated, the date of their filing with the superintendent of exports — if, indeed, 'they were filed with him at all — does not appear. But it does appear with unquestionable certainty that they could not have been filed until after October 31, 1868; for that was the day on which they came into existence, and it lacked only three days of being five months after the clearing of the last vessel that took out any of the machinery on which the drawback is claimed. This fact does not seem to have been observed by the Commissioner, .though it is just as material afact as any other required by the regulations to be shown.
When a government declares by law that certain specified acts must be done, in order to a citizen’s becoming entitled to a gratuity out of the public Treasury, to which, aside from that law, he would have no right, every one of the acts must be done before he can claim the gratuity.
And when a time is limited within which any of the acts shall be done, the very fact that it is limited is a. declaration by the government of its materiality, and constitutes a condition precedent, which must be fulfilled before the right to the gratuity can be fixed. No claimant can say that it does not matter *302 whether be did the act within/ the required time ; for he has no standing as a claimant before the Commissioner unless it was done within that time; nor can any officer of the government, or any court, dispense with the requirement of time, unless express law so authorize; and we know of no such law applicable here.
No more familiar and forcible illustration of these views could be presented in this court than that connected with the administration here, within the last thirteen years and more, of the Abandoned and captured' property Act of March 12,1863, which required claims under it to be presented here “ within two years after the suppression of the rebellion.” That act conferred a right to sue here, which, but for the ^ terms of the act, could have had no existence. But it required the suit to be brought within that time in order to enforce the right; and a suit after that time never has been, nor could it possibly be, maintained.
And so, in this case, before the Commissioner of Internal Revenue could legally allow, or even consider this claim, it was indispensable that it should appear, in the way prescribed by the regulations, that the certificate and affidavit showing the payment of the tax were filed with the superintendent of exports “within sixty days after the clearing of the vessel on which the merchandise was laden.” Not only was that fact not shown, but, on the face of the papers, it was plain that it could not be shown; for those papers had no existence for months after the sixty days expired.
Such being the case, the Commissioner had no authority to consider, much less to adjudicate, the claimant’s demand; and therefore his allowance of it was simply a nullity, .upon which , no possible right of action could be based.
At the argument several other questions were raised by the counsel for the defendants, which we do not deem it necessary to decide now. They inay possibly be presented in future cases, where their decision may be a necessity, and they can then be considered. . . ..
- The judgment of the court is that the petition be dismissed.
' Nott, J., was absent when this case was heard, and took no part in its decision. ' ’ ''