Richardson, J.,
delivered the opinion of the court:
The claimant has a meritorious case upon the facts proved as set forth in the finding, and, unless his right of action is lost by the omission of performance of certain stipulations or provisions of the contracts, by which the defendants do not appear to have suffered any injury, he is entitled to recover. He has transported stores and supplies for the Army according to the terms of his agreement in the two contracts, copies of which are annexed to his petition, and the same were received and receipted for by the defendants’ officers stationed at the places of delivery, and by them certified to have been delivered in good order and condition, except some few articles for which he is charged. The defendants have had the full benefits of the claimant’s services and have paid nothing whatever for them; and they maintain now that they are not bound to pay anything, and that the claimant must lose the whole of his earnings, because certain proceedings, relating wholly to the proof of the manner in which the services were performed, which they set up as conditions-precedent to the right of recovery under the strictest technical construction of the language of the contracts, have been neglected.
Well-settled principles establish that the objects designed to be attained by the parties to written agreements shall.be taken into consideration in the interpretation of the meaning, application, and effect of the language used, and that such a reasonable construction shall be given to the different provisions and different parts as will most effectually carry out the real intentions without doing injustice or injury to either party.
*171 Directions, stipulations, and provisions which do not apply to the essence of the contract, and which form no important part of the substantive things to be done, if construed as conditions-preeedeut to the right of recovery for whatever, is performed in good faith, would often work great hardship and injustice, if not encourage fraud upon ignorant and unsuspecting persons, who naturally look more to substance than to form, and would be snares of the designing in which to entrap the unwary, or at least pitfalls into which even the cautious might stumble. In such cases conditions-preeedent are not to be favored by courts, and, whatever the language may be, it is not to be so construed unless it will admit of no other reasonable interpretation.
This action is upon two written contracts between the parties, the provisions of which are nearly the same in both, and in order to determine the rights and liabilities on the one side and the other, it is necessary to consider carefully the language of the contracts, their objects and scope, the real intentions of the parties, and their acts and proceedings thereunder.
The substantive object on the part of the defendants was to obtain the transportation of a large quantity of military stores and supplies from Austin and San Antonio, Tex., to several distant places in good order and condition, and with proper dispatch, as set forth in the first article of each contract. On the part of the claimant the object was to obtain employment and receive compensation for his services actually performed, and the following articles specify how and upon what vouchers, receipts, and indorsements he should be paid.
“Article 5. The military stores and supplies which shall be transported tinder this agreement shall be consigned to their respective destination, and receipts on bill of lading shall be given by the officer of the Quartermaster’s Department serving at the place of consignment for the full quantity of stores that shall be delivered; and upon such receipts payment shall be made to the said Edward Braden, as hereinafter provided.”
“ Article 7. That upon the arrival of any train at its place of destination or delivery the officer or agent of the Quartermaster’s Department at the point of delivery shall indorse the bill of lading in accordance with the finding of a board of survey, as hereinafter provided, stating the quantity and condition of the stores delivered; upon which indorsement payment shall *172 be made as per contract, deducting for any articles missing, lost, destroyed, or damaged, and which the board of survey may ñnd to be properly chargeable to the contractor, at the rate specified in article 8 of this agreement.”
,. “Artole 15. For and in consideration of the faithful performance of the stipulations of this agreement, the said Edward Braden shall be paid at the office of the Quartermaster’s Department, at San Antonio, Tex., in the legal currency of the United States, according to the distance supplies are transported, and agreeably to the rates specified in the tabular statement hereto annexed, signed by the parties to this agreement.”
Numerous provisions and stipulations were inserted with reference to the convenience of the parties in transacting the business, to insure the success of the undertakings, to prevent controversies, and to settle some rights and liabilities in case of disputes; as in the third article, wherein the claimant agreed to have an agent at the points of departure, to whom written notice should be given by the officers of the United States of the stores which he would be required to transport ,• and in the fourth' article, whereby such officers were bound to give the claimant written notices of the kind and quantity of stores to be transported from time to time and the places to which they would be consigned, such notices to be given for specified lengths of time in advance, in order to enable the contractor to be in readiness for the service; and in the sixth article, wherein it is made the duty of defendants’ officers to inspect the means of transportation submitted to them by the contractor, and to certify on the bills of lading their acceptance thereof; and the number of wagons or carts to be in each train are therein expressly specified. It was contemplated, also, that there might be delays in moving the trains, by tire fault either of the contractor or the defendants, and losses of some of the stores, or damages thereto, and deficiencies in weight, by shrinkage or otherwise; and it was provided in the eighth article that on arrival of each train a board of survey should be called without delay, to be applied for in writing by the contractor, which board should examine the quantity and condition of the stores transported, and, in case of loss, deficiency, or damage, to investigate the facts and report the apparent cause, assess the amount of loss, deficiency, or damage, and state whether it was attributable to neglect or want of care on the part of the con *173 tractor, or to causes beyond his control, and that a copy of the proceedings should be attached to the bill of lading and should govern the payments to be made on it. In the same article other specific provisions were made for determining the amount of loss or damage, and the claimant was to be held responsible for double the value of all articles lost by his fault. It was also made the duty of the officer receiving the supplies to indorse on the bill of lading the distance of transportation, in no case to exceed the distance by the usual and customary route. In the ninth article provision was made for calling a board of survey, on the written request of the contractor, when trains were delayed by the defendants’ officers; and there were other stipulations relating to details of the business which it is not necessary to refer to.
All these provisions and stipulations which we have recited were omitted in the case of each of the many trains and deliveries of stores, except when some loss, damage, or deficiency was alleged by the officers of the Quartermaster’s Department whose duty it was to receive and receipt for the stores, and then such portions of the provisions as were applicable thereto were substantially followed. The omissions were so numerous and so systematic that we cannot avoid the conclusion that they were made with the common consent of the contractor and the defendants’ officers, especially as each did important acts which by the strict terms of the contracts were to be performed only upon the previously doing by the other party of other acts which were omitted. It is apparent that the omissions were regarded at the time by those engaged in executing the contracts on both sides as of no practical importance when- the stores arrived in good order and condition, and the receiving-officer accepted them and gave his receipt therefor and indorsed the bill of lading as required.
There were thirty-eight bills of lading delivered to the claimant with the stores and supplies transported by the same number of trains. Upon thirty-two of these the agent or officer of the Quartermaster’s Department at the place of delivery indorsed his receipt- for the same; in good order and condition, and also his certificate of.the weight, which agreed with that of the bill in each case. This was a full compliance with the terms of the fifth article, wherein it was specified upon what vouchers or receipts payments should bp made; and-- also with those of the *174 seventh article, wherein it was provided again upon what in-dorsement payment was to depend, unless by that article it is necessary that it should appear on the bill of lading or be proved that the officer’s indorsement was made “ in accordance with the finding of a board of survey.”
It is maintained on the part of the defendants that the finding of a board of survey in each case on the arrival of a train, or a written application of the claimant for the calling of a board, is a condition-precedent to his right of recovery of any compensation for the transportation performed by him and accepted by the defendants’ officers without objection. But it is not so specified, either in the fifth or seventh article, which we have quoted. In the latter, a board of survey is referred to more in the nature of a condition-precedent to the indorsement by the defendants’ officers of the quantity and condition of the stores delivered and received, or as a direction or an instruction to them upon what evidence to make their certificates, than as an obligation upon the claimant to see that a board of survey was called. When this direction, instruction, or condition, if it can be so called, was neglected or waived by the defendants’ own officers charged with the duty of receiving the stores, because they found the quantity correct and the supplies in good order and condition, and so indorsed the bills of lading, no questions arising as to loss, damage, deficiency, or delay, it would have been practically a useless and idle ceremony, a mere matter of form, for the claimant in thirty-two successive cases to apply for a board of survey. Had such a board been considered necessary in any instance it might have been called by the defendants’ officers without a request from the claimant; and it appears that a board was in fact convened in every one of the cases in which damages of any importance were claimed at tiré time of delivery. It is manifest from all the acts and proceedings of the parties engaged in the execution of these contracts that the defendants’ officers did not regard it as necessary or important to have a board of survey in the large number of cases in which no loss, damage, deficiency, or delay was claimed and there was nothing to be investigated, and it is reasonable to conclude that to avoid the trouble, expense, and inconvenience of convening a board, composed, as it would necessarily be, of officers of the Army who might thereby be called from other more pressing duties, they gave the required receipts and made the indorse* *175 meats in good faith, without the intervention of a board in such cases, and thereby induced the claimant to believe that he need not make application therefor.
In the eighth article there is language which taken by itself would seem to express a condition precedent, as claimed by the Assistant Attorney-General. It is this: “ Should no board of survey be called when requested by the contractor, through failure on the part of the Quartermaster’s Department, or other military authority, to convene one, it shall be considered that the contractor has delivered all th estores as specified in this bill of lading in good order and condition, and he shall be paid accordingly. But before such payment is made the fact must be shown that the contractor or his agent did make application in writing to the Quartermaster’s Department for a board of survey.” But that language is used in connection with provisions respecting cases in which there was a loss, deficiency, or damage alleged, and to be investigated, and it must be construed with reference to the object of that article. Neither the same language, nor any similar language, appears in the fifth and seventh articles, wherein it is expressly set forth on what vouchers, receipts, and indorsements payments were to be made.
The eighth article does not require a board of survey to be called absolutely in every case upon the arrival of a train, as would have been the most natural provision to insert, if such had been the intention. It provides for calling a board only upon the written application of the claimant,- and specifies the liability which the defendants would incur by failing to comply with the terms of the application. This implies the right of option on each side to take measures or not for the convening of a board, according to the circumstances and necessities of each case and the claims set up. When a board should be called, both parties would be concluded by its findings, and when applied for and not called the defendants were to be concluded by the bill of lading without the receipt, certificate, or indorsement of any officers. If none were called for, it would seem .to follow only that the contractor would be bound by the ■receipts and certificates of the agent of the Quartermaster’s Department receiving the stores, and by the facts as to damage, loss, or deficiency which should be certified or proved. Such seems to have been the construction given by the parties engaged on both sides at the time the deliveries were made, and their *176 understanding of the spirit if not the true meaning of the contract; and their actions appear to have been governed thereby. In four cases where loss or damage was claimed boards of survey were called, and the amount was assessed and charged to the contractor. In two other cases where the deficiency was small and apparently not very important, the weight was reduced by the officer receiving the stores, and so certified by him, without a board of survey, and no other damage was claimed at the time of delivery or has been proved here on the trial in all the thirty-eight cases of bills of lading and transportation upon which this action is based.
Under such circumstances, to hold now that the contractor must lose all compensation for his services in transporting the stores and supplies actually received, accepted, and certified to, as to both quantity and condition, by the defendants’ officers, without objection made at the only time when the claimant could have remedied and supplied the omissions had they been objected to; when those officers allowed the claimant to go on over a considerable period of time delivering stores and supplies by train after train, to the number of more than thirty, and gave him receipts therefor which seemed to comply with the provisions of the contract, without requiring the preliminary action of boards of survey, would be not only a great hardship upon the claimant, but would defeat the ends of justice under the legal forms and technicalities of a strict construction of the language of the contracts.
-It is further maintained on the part of the defendants that it is a condition-precedent to the claimant’s right to recover that the distance of transportation should be indorsed on the bills of lading. There is a provision at the close of the eighth article that the distance was to be indorsed on the bills of lading, but it is not expressly made a condition-precedent, but rather a direction or instruction to the defendants’ agents, and in our opinion is merely directory. The same article provides that transportation shall be paid in all cases according to the distance traveled, in no case to exceed the distance by the usual and customary route, and by the fifteenth ar.ticle-the contractor is to be paid according to the distance supplies are transported.” Had the distance been indorsed by the quartermaster erroneously, the contractor would not have been bound thereby, - because it was the actual and not the certified distance, within *177 the limits specified, that was to govern the payments. Such indorsement was not made-on á single one of the thirty-eight bills of lading. This was an omission by the defendants’ officers in not following the directions and instructions laid down for them, and was a matter beyond the claimant’s control to remedy. Those officers had the bills in their possession and made other indorsements thereon, but uniformly neglected this, and we cannot but infer therefrom that it was understood on both sides that the usual and customary distance was traveled. It would be an unreasonable construction to hold that an in-dorsement to be made by the defendants’ officers, and not by third parties, an indorsement which, if made, would not conclude the claimant, was intended as a condition-precedent to his recovery of compensation for his services. In legal effect this provision is very much like that in the sixth article, requiring the claimant’s teams to be inspected, and making it the officer’s duty to indorse his acceptance on the bill of lading before delivering the stores for transportation. This, too, was not done in a single case, but was uniformly omitted. It would hardly be claimed aud was not argued at this trial on the part of the defendants that such indorsement was a condition-precedent to the claimant’s right of recovery, when those officers delivered to him the stores and supplies to be transported by such teams as he had, and he' did actually transport them, and they were duly received, accepted, aud receipted for in good order and condition at the place of delivery.
Before this action was instituted the present defendants brought a suit in the United States circuit court, western district of Texas, against the claimant and his sureties on these two contracts for certain breaches therein alleged. The claimant joined issue and the case was tried, a verdict found by the jury, and judgment entered against the plaintiffs therein, who are the defendants in this action. As to all matters litigated in that suit the present defendants have heretofore had their day in court, and the judgment is conclusive against them.
Upon the whole case the controlling facts are simply these: The claimant has performed the services and they have been accepted by the defendants’ officers. Some technical omissions in certain proceedings not of the essence of the contracts have been made, mostly by the defendants’ officers,' and wherein made by the claimant those omissions have been treated as un *178 important, assented to, or waived by those officers at the vital point of time when they should not have been passed by in silence, if intended to be insisted upon, and above all thé defendants have suffered no loss or damage on account thereof.
The claimant is entitled to recover the contract-price of transportation as set forth in the second and fourth fludings, $11,473.51, less $534.76 charged against him on the fifth bill of lading, $200.94 charged on the sixth bill, and $34.10 and $49.94, being twice the cost of the stores lost or deficient, as certified on the seventeenth and twenty-eighth bills, according to the rule laid down in the contract. And judgment will be entered in his favor for the balance, $10,653.77.
Peck, J., was absent when this case was heard, and took no part in the decision.