Moss, Judge,
delivered the opinion of the court:
This is an action by plaintiff, the Cambridge Loan and Building Company, for the recovery of the sum of $14,767.56, which it alleges was illegally collected by the Government as income tax for the years 1918 to 1923, inclusive. Said taxes were paid under protest, and a claim for refund was duly filed with the Commissioner of Internal Bevenue and was rejected on the 26th day of November, 1924.
The question for determination is whether or not plaintiff is entitled to exemption from taxes under the provisions of the revenue acts of 1918 and 1921, respectively.
Under section 231 (4) of the revenue act of 1918, 40 Stat. 1057, exemption is granted to “ Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit.”
Under section 231 (4) of the revenue act of 1921, 42 Stat. 253, exemption is granted to “ Domestic building and loan associations, substantially all the business of which is confined to making loans to members.”
*637 The act of 1918 is applicable to the years 1918, 1919, 1920, and from January 1 to November 23, 1921; and the act of 1921 is applicable to the period between November 23 and December 31,1921, when the act was passed, and to the years 1922 and 1923.
Plaintiff company was organized and incorporated under the laws of the State of Ohio in 1885, and has continuously since that time been engaged in the business of a building and loan association. Its capital stock for the years 1918 to 1923, inclusive, was $1,500,000, of the par value of $50 a share.
Under the provisions of its constitution and by-laws plaintiff company was organized “ For the purpose of raising money to be loaned to its members and others, and for such other purposes as are authorized by law.”
It is contended by the Government that the method pursued by plaintiff in the transaction of its business was of such a character as to destroy the essential requirements of building and loan associations as contemplated by the taxing-statutes involved herein.
In an effort to ascertain the intention of Congress in the enactment of the exemption provisions of the acts of 1918 and 1919, it is deemed important to briefly review the history of legislation on this question, as well as the current administration of the various statutes by the Internal Revenue Bureau.
The revenue act of 1909 provided that the special excise tax therein contemplated should not apply to “ domestic building and loan associations organized and operated exclusively for the mutual benefit of their members.” Under this act certain litigation arose, resulting in each case in decisions favorable to the taxpayer. The Internal Revenue Bureau accepted the decisions of the courts and refunded all taxes which had been collected under this act, except those taxes which had been barred by the statute of limitations. In February, 1917, Congress authorized and directed the refund of all such taxes, referring to same as taxes “ illegally collected from said associations under the excise tax act of August 5, 1909.”
*638 By the act of October 3, 1913, the restrictive term “ exclusively ” was omitted, the act merely providing that the tax therein imposed should not apply to “ domestic building and loan associations.” Under this act no building and loan association was subjected to the payment of a tax, nor were they required to file a tax return.
By the act of September 8, 1916, Congress provided that “ there shall not be taxed under this title any income received by * * * Fourth. Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit.” No building and loan association was subjected to the payment of income tax under this statute, nor was any tax return required to be filed.
The 1918 act, section 231 (4), contained the same language as that employed in the 1916 act, and under this statute no income tax was assessed or collected, nor was any return required.
The act of 1921, passed November 23, of that year, modified the 1916 and 1918 acts, in so far as it relates to building and loan associations, in only one particular. It provided for the exemption of those associations “substantially all the business of which is confined to making loans to members.”
It will be noted, therefore, that under none of the acts, except the act of 1909, was any income tax required to be paid by any building and loan association; and that the taxes paid under the 1909 act were refunded.
A proper consideration of this legislation, together with the interpretation given to it by the Internal Revenue Bureau, covering a period of many years, and involving five separate legislative enactments; the elimination of the harsh provisions of the earlier act of 1909; and the refund of the taxes collected under the 1909 act would seem to indicate clearly a fixed purpose and intention on the part of Congress to exempt from taxation building and loan associations conforming in essential respects to the primary business of such associations. It was not until the early part of the year 1922, after the effective date of the act of 1921, that ■the Commissioner of Internal Revenue undertook to subject *639 any building and loan association to the payment of income tax.
The Government chiefly relies in this case upon the decisions in the case of Acklin v. Peoples Savings Association, 293 Fed. 392, and in the case of Lilley Building & Loan Co. v. Miller, 280 Fed. 145. The opinion in the former case announced certain general principles governing the operation of building and loan associations, which are usually accepted as sound and correct, but the sole question at issue in that case was whether or not the Commissioner of Internal Keve-nue had authority to define the qualifications for membership, the court holding that he had no such power. The purpose of citing this case in support of the Government’s contention in the case now being considered is not clear.
Under the facts in the Lilley case the court held that the association was not a true building and loan association, but was in effect a savings bank. This action involved the years 1918, 1919, and 1920, and is therefore governed by the 1918 act. Conspicuous among the facts as they appear in the opinion are the folloiving: Eeceipts of deposits from nonmembers constituted the bulk of its business. It received time deposits for which it issued certificates bearing interest at the rate of 5 per cent. The year 1920, considered as typical of the period of time involved, shows running stock of $121,000, paid-up stock of $123,000, deposits of $830,000, borrowed money $20,000, and a reserve fund of $18,500. Stockholders numbered 301, and borrowers 495, of whom only two were stockholders. It had 2,239 savings depositors. The deposits from nonmembers were evidenced by entries in books “ such as are ordinarily used by savings banks.” About 80 per cent of its receipts and 97 per cent of its loans were transactions with nonmemibers.
A statement of the essential facts connected with the operation of plaintiff company will readily demonstrate the inapplicability of the decision in the Lilley case to the facts in the present case.
In the year 1918 forty mortgage loans were made to members and thirty-nine to nonmembers; in 1919, one hundred and fifty-eight to members and forty-seven to nonmembers; in 1920, one hundred and forty-three to members and seventy to nonmembers; in 1921, one hundred and seventy-seven to *640 members and thirty to nomnembers; in 1922, one hundred and seventy-five to members and ten to nonmembers; in 1923, two hundred and sixty-two to members and one to a nonmember. Through the entire period, 1918 to 1923 inclusive, nine hundred and fifty-five mortgage loans were made to members and one hundred and ninety-seven to nonmembers, the loans to members being more than 82 per c¡ent of the total number of loans. In the Lilley case, out of a total of 495 loans, only two, or four-tenths of one per cent, were members or shareholders.
For the period from 1918 to 1923, inclusive, the total amount of loans was $2,211,604.40. Of this amount $1,488,-294.28 was loaned to members and $783,310.12 to nonmembers. While the ratio varied from year to year, the percentage for the whole period was 66 per cent to members and 34 per cent to nonmembers.
The net profits of plaintiff company for each year, after providing for expense of operation and the reserve required under the law of the State of Ohio, were distributed semiannually, to members only, in dividends at the rate of 5.7 per cent for the year. The principal source of the earnings of the company was interest. It deposited surplus funds with other building and loan associations from which it derived interest at the rate of 6 per cent, and such deposits could be withdrawn at any time, and the earnings from these transactions likewise accrued to the benefit only of the members. It received deposits from nonmembers, evidenced by certificates of deposit or by pass books such as are in common use by building and loan associations. It paid interest on such deposits at the rate of 3 per cent, 4 per cent, and 5 per cent, determined by the length of time for which the deposit was allowed to be retained. Such deposits constituted a portion of the fund from which loans were made at the established legal rate, and the benefit from these transactions likewise accrued to the members alone. It deposited a part of its surplus funds in other building and loan associations. We fail to see the objection to this occasional practice, as it derived an advantageous return from such deposits which accrued also to the benefit only of members; and inasmuch as these deposits could be withdrawn at any time *641 it enabled plaintiff to carry a smaller banking balance. In making loans to nonmembers the bori-owing needs of members were never neglected. So far as the record discloses, plaintiff was at all times in a position to supply the borrowing needs of its members, and at no time was a borrowing nonmember preferred over a member. A comparison of the receipts from members with the receipts or deposits from nonmembers can not be shown on account of the unsatisfactory state of the record, which seems to set forth as to this item only net balances at the end of the year. However, under our view of the whole case this information would not have a controlling influence in determining the rights of the parties.
It should be observed that in each of the acts dealing with the subject under consideration Congress has merely provided for the exemption from Federal taxation of “ domestic building and loan associations” without attempting to de-fíne or describe such associations. The limitation in the 1009 act received the disapproval of Congress when it authorized and directed the taxes which had been collected under said act to be refunded, referring to same as taxes “ illegally collected * * Inasmuch as Congress, during the period from 1909 to 1921, has deemed it proper to impose no limitation or restriction upon the exemption from taxes of building and loan associations, neither in express terms nor by defining a building and loan association, unquestionably the court is without authority to do so. In enacting these various statutes Congress was legislating with reference to building and loan associations existing and operating at the tvrrn under the various State laws. It was dealing for taxation purposes with a creature of the State, controlled and regulated by the State under its general police power. The law of the State in which they were created was the only law which described or defined a building and loan association, and Congress was chargeable with a knowledge of that lawr. Until the enactment of the 1921 act Congress accepted these associations as they existed and were opei’-ated in the different States; and it will be noted that in the 192L act there was still no evident purpose of imposing any *642 restriction upon the methods of operation further than to confine the benefits of the statute to those associations making loans substantially to members. If Congress had desired to do so it could have further restricted the exemption and limited it not only to making loans to members but also to the acceptance of deposits only from members, or to the requirement that the amount of the loan should be measured by the amount of the subscription to stock, and many- other things complained of by the Government; but it' has not thus far done so. In the absence of such legislation it is not within the authority of the court to extend or ■restrict the provisions of the statute. Its proper function is to construe and apply the law as it is written.
There is appended hereto as a footnote[1] a compilation of the sections of the Ohio code containing the grant of *643 authority by the State for the operation of building and loan associations in that State. Operating under that authority and grant of powers plaintiff company has, since the year 1891, submitted an annual'feport to the superintendent of building and loan associations as required by law, and has received a certificate each year to the effect that it had complied with the Ohio laws relating to the conduct of its business as a building and loan association. It should be stated in this connection that during the years in question here only one objection was made by the State authorities to the methods employed by plaintiff in the operation of its business, and that had reference to a $5,000 hotel bond acquired by plaintiff as an investment. The situation was corrected in accordance with the requirement of the superintendent of building and loan associations.
It will be noted that plaintiff company was authorized to receive deposits from nonmembers and to make loans to members and nonmembers. In the decision in the Lilley *644 case the court stated that “ It is not thought that the making of loans to nonmembers, or borrowing front nonmentbers, or receiving deposits to be withdrawn on demand or on time, so long as such transactions are simply incidental to the primary business of operating a mutual building and loan association, would defeat the exemption.” The prvnmry business of a building and loan association is to raise money to be loaned to its members and others.
When it is remembered that the entire benefit derived from the transactions which characterized plaintiff’s business •operations accrued to members alone, can it be said that those transactions resulted in the destruction or the serious impairment of the primary business of operating a building and loan association as contemplated in the taxing statutes? We think not.
During the years 1918,1919, and 1920, and until November, 1921, plaintiff company was operating under statutes which, as stated hereinbefore, imposed no limitation whatever. No tax was collected and no tax return was required. The history of this legislation, as above outlined, together with the continuing and consistent interpretation given to those acts by the administrative officials of the Government during a period of more than twelve years, and under five successive revenue acts, if not controlling, certainly constitutes a strongly persuasive influence in a proper determination of this case. The act of 1921 exempting only such associations as confined their loans substantially to members could not affect the legal status of associations operating prior thereto and under other acts which did not even require the filing of a tax return. In attempting, after the passage of the 1921 act, to enforce the collection of taxes under prior acts the Commissioner of Internal Revenue was evidently under the impression that the exemption under the prior acts was likewise intended only for associations whose .business was substantially confined to loans to members. The 1921 act is not susceptible of this construction. It was operative only upon the business of such associations after the effective date of the act. It should be stated in this con *645 nection that since the passage of the 1921 act plaintiff company has substantially complied with its provisions.
There is one other point that deserves mention. In the Lilley ease the court held that the words “ without capital stock organized and operated for mutual purposes and without profit ” in the 1916 and 1918 acts qualified both cooperative banks and building and loan associations. The Government in this case makes the same contention, under the ruling in the Lilley 'ease. The legislative history of the act in question easily demonstrates that such was not the intention of Congress. The House bill contained only the provision for the exemption of “ Domestic building and loan associations.” The Senate proposed an amendment providing for the exemption of “ cooperative banks without capital stock organized and operated for mutual purposes and without profit * * The House disagreed, and the matter went to the conference committee. The explanation by the managers of the House of their agreement with the Senate is as follows: “ The Senate amendment provides that the income of cooperative banks organized and operated for mutual purposes and without profit shall be exempted from the income-tax provision. The House recedes from its disagreement to the Senate amendment, with an amendment exempting cooperative hanks without capital stoek organized and operated foo^ mutual purposes and without profit It was clearly the purpose of Congress to exempt cooperative banks as described and defined in the act in addition to building and loan associations, and in the very nature of the case the qualifying language was intended to apply only to such banks. Furthermore, it is provided in article 68 of Treasury Regulations 33 promulgated under the 1916 act under the heading “ unconditional ” that “ Among the corporations exempt from tax, without condition are * * * domestic building and loan associations * * In the opinion of the court the construction given to the act by the court in the Lill&y case and contended for by the Government in the instant case is not sound. The qualifying language was intended to apply only to cooperative banks.
*646 The plaintiff is entitled to judgment for the amount of taxes which have not been refunded, amounting to $14,767.56, together with interest from September 18, 1924, amounting to $2,407.11, an aggregate of $17,174.67. And it is so ordered.
Hay, Judge; Booth, Judge; and Campbell, Chief Justice, concur.

 OHIO CODE
Sec. 9043. Interpretation of terms. — A corporation for the purpose of raising money to be loaned to its members, and others, shall be known in this chapter and in the laws relating to the department of building and loan associations as a “ building and loan association ” or as a “ saving association.” * * *
SEC. 9048. deceiving of deposits; joint aecotmts. — To receive money on deposits, and all persons, firms, corporations, and courts, their agents, officers, and appointees may make such deposits and stock deposits, but such corporation shall not pay interest thereon exceeding the legal rate. * * *
Sec. 9052. "Withdrawal of deposits. — To permit withdrawal of deposits upon such terms and conditions as the association provides except by check or draft. But no such association shall be permitted to carry for any member or depositor any demand, commercial, or checking account. Nothing in this chapter shall prevent members or depositors from withdrawing funds by nonnogotiable orders.
Sec. 9653. Cancellation. — To cancel shares and parts of shaves of stock upon which the credits have been withdrawn, or upon which loans have been repaid, and reissue them as new stock.
Sec. 9055. Property, leasing, holding of. — To lease, acquire, hold, encumber, convey, and rent such real estate and personal property as is necessary for the transaction of its business, or necessary to enforce or protect its securities.
Sec. 9656. Borrowing money. — To borrow money, not exceeding twenty per cent of the assets, and issue its evidence of indebtedness or other security therefor.
Sec. 9657. Loans; enumeration of securities. — To make loans to members and others on such terms and conditions as may be provided by the association and upon the following securities only:
First. Obligations secured by mortgage or deed of trust on real estate or any leasehold estate therein, which mortgages or deeds of trust may be made direct to the association or they may be made to third persons or corporations and pledged by them to the association as collateral. Such obligations shall be the first liens on real estate, or any leasehold estate therein, but additional loans may be made where the association holds all prior mortgage liens. Nothing-herein, however, shall prevent an association organized under this act from accepting additional security other than that herein provided where the pri *643 mary and principal security is a first mortgage or deed of trust on real estate or any leasehold estate therein.
Second. Obligations secured by pledge of stock or of deposits in such association, but such loans shall not exceed either the paid-up value or the withdrawal value of such stock or deposits.
Third. Obligations secured by pledge of any of the securities provided for in section 9660 of the General Code, not to exceed, however, ten per cent of the assets of the association.
Fourth. Building and loan companies that have been making loans primarily on other securities than those named in the above sections continuously since January 1, 1913, are authorized to continue the loaning on such securities.
Sec. 9660. Investment of idle funds up to 20 per cent.- — To invest any of its idle funds, or any part thereof, in bonds or interest-bearing obligations of the united States, or of the District of Columbia, or of the State of Ohio, or of any county, township, school district, or other political division in the State of Ohio, or of any incorporated city or village in the State of Ohio, or in farm-loan bonds issued under the provisions of the act of Congress known as the Federal farm loan act, approved July 17, 1916, and amendments thereto; and in such other securities as now are or hereafter may be accepted by the united States to secure Government deposits in national banks. But such investments at no time shall amount in the aggregate to more than twenty per cent of the assets of such corporation.
Sec. 9662. Consent of superintendent to sell, etc. — To buy but not to sell, except with the written consent previously granted by the superintendent of building and loan associations, interest-bearing obligations secured by real-estate mortgages, which shall in all respects comply with and be within the rules adopted for making mortgage loans by the corporation making such investments. Such mortgage investments may be held and reported as mortgage loans.
Sec. 9663. Distribution of earnings. — To make such annual or semiannual distribution of the earnings as is hereinafter provided, and as the constitution and by-laws may prescribe.