**LEACH v. NICHOLS, Collector of Internal Revenue.**

Circuit Court of Appeals, First Circuit.
December 27, 1927.

No. 2144.

Internal revenue ⊂⇒38(1)—Alleged agreement by executor held not to bar action to recover illegal estate tax exacted (Revenue Act 1918, § 1305 [Comp. St. §§ 6371½c–6371½e]; 26 USCA 158).

An alleged agreement by the executor of an estate, in an estate tax deposition made pursuant to Revenue Act 1918, § 1305 (Comp. St. §§ 6371½c–6371½e), as to values and what should be included in the taxable estate, but which was not a compromise agreement approved by the Secretary of the Treasury under Rev. St. § 3229 (26 USCA § 158; Comp. St. § 5952), and was not followed, by the commissioner, who determined the amount and value of the estate from all the evidence, *held* not to bar an action by the executor to recover alleged excessive tax exacted.

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Action at law by Robert M. Leach, executor, against Malcolm E. Nichols, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

O. W. Taylor, of Boston, Mass. (White & White, of Taunton, Mass., on the brief), for plaintiff in error.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Gloucester, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an action brought by the plaintiff in error, as executor of the estate of William E. Walker, deceased, against Malcolm E. Nichols, as the Collector of Internal Revenue, to recover the sum of $49,634.73 assessed and collected as estate taxes due upon said estate under provi-

sions of the Revenue Act of 1916, as amended and re-enacted October 3, 1917 (Comp. St. §§ 6336½bbb, 6336½bbbb). The case is here upon a writ of error from a judgment of the District Court of Massachusetts.

The sole question presented is whether the court was right in holding that the plaintiff, as executor of said estate, had entered into a valid and binding compromise agreement, whereby he was estopped from maintaining this action.

William E. Walker, late of Taunton, Mass., died November 9, 1918, testate. The plaintiff was appointed executor December 6, 1918, and on or about May 8, 1919, filed the return required by law and paid an estate tax of $37,700.68 assessed according to said return. Later he received a notice from the Commissioner of Internal Revenue that an additional tax would be claimed and assessed, and paid $50,000 before receipt of notice of the final determination of the tax. On March 18, 1922, the Commissioner made a final decision that the total tax due from said estate was $89,735.64. The executor then paid $2,034.96, being the balance of the tax due according to the assessment made by the government, and interest amounting to $3,988.44.

The difference between the amount determined by the government as the gross estate of which the testator died seized and possessed and that returned by the executor was occasioned almost entirely by the claim that transfers made by William E. Walker on or about November 13, 1917, and prior thereto amounting to $404,450.74, were gifts made in contemplation of death, of which the fact that they were made within two years of his death was prima facie evidence under the provisions of said Revenue Acts.

The errors assigned are the direction of a verdict for the defendant, and the admission and exclusion of evidence. Under the conclusion which we have reached, however, it is only necessary to consider the first, which raises the question of whether the alleged agreement entered into by the executor constituted a bar to the maintenance of this action.

On November 23, 1921, the plaintiff filed with the internal revenue agent at Boston what is denominated an "estate tax deposition," in the first paragraph of which this statement appears:

"1. That as the result of a hearing held in the office of the internal revenue agent in charge on the 23d day of November, 1921, he, as executor of the above-named estate, now agrees to and accepts as taxable property in the estate and at the values recommend-

ed all the certain contested items in the estate as indicated below, provided: (1) That no portion of the 1,000 shares in the Magee Furnace Company, given by the decedent to Robert M. Leach on November 30, 1917, be included in the gross estate; and (2) that all of the shares of stock of the Weir Stove Company shown in this estate be valued at $1,000 per share, which in his opinion is the full and fair value of said stock as of the date of the decedent's death."

This is followed by a statement of the taxable property of the estate and its value.

On November 30, 1917, the decedent had transferred to Robert M. Leach 1,000 shares of the Magee Furnace Company, and also 100 shares of the Weir Stove Company. In December, 1917, and January, 1918, he had transferred to Mary W. Leach, his daughter and the wife of Robert M. Leach, 285 shares of the Metropolitan Furniture Company, 49 shares of the Atherton Furniture Company, and a note of Le Baron Atherton for the sum of $12,000, with interest from January 4; and on January 21, 1918, he had transferred to his wife, Jennie E. Walker, 200 shares of the Weir Stove Company. All of the property covered by these transfers was claimed by the government to constitute a part of the gross estate of the decedent.

In the alleged agreement signed by Robert M. Leach as executor he agreed that if the Magee Furnace Company stock were not held to be a part of the estate and to have been legally transferred, and, if the Weir Stove Company stock should be valued at $1,000 per share, the other property transferred by the decedent as above stated should be held to be a part of the estate of the decedent and subject to the estate tax, and also agreed that certain increases in the values upon real estate over those given in his return would be accepted by him.

This alleged agreement appears upon a form designated "Estate Tax Deposition," which, under section 1305 of the Revenue Act of 1918 (Comp. St. §§ 6371½c–6371½e), was used for the purpose of ascertaining the correctness of the return which had been made by the executor. This section provides that the internal revenue agent may take the testimony under oath of the person rendering a return with reference to an estate.

The third, and concluding, paragraph of this alleged agreement is as follows:

"3. That he makes this affidavit, without prejudice, and waives all question of protest, except as above mentioned, in order to expedite or hasten as much as possible the final determination of the tax in this estate."

This was signed and sworn to by Robert M. Leach, as executor.

On March 18, 1922, after it was received, the Bureau of Internal Revenue passed upon the estate's abatement claim and reduced the tax assessment of which it had given notice by the amount of $27,724.20, and made the assessment of the tax in accordance with the alleged agreement of November 23, 1921, assessing the real estate at the values given therein, omitting from the gross estate the transfer made by the decedent to the plaintiff, and accepting the value of the stock of the Weir Stove Company placed upon it in the alleged agreement.

On June 26, 1925, the estate filed a claim for refund of $60,058.03 and interest.

There were several conferences between representatives of the estate and officers of the Bureau of Internal Revenue, and several letters passed between them after the filing of the alleged agreement. On February 3, 1922, Albert R. White, attorney for the executor, wrote to the commissioner of Internal Revenue, asking definite information as to the claims made by the Bureau, so that the limit of the scope of inquiry might be limited. On February 10, 1922, the Commissioner replied to this letter, stating, in substance, that it would be impossible to comply with his request until there had been a hearing as requested, which was to be held in Washington on February 14, 1922. And again, March 18, 1922, a letter from the Commissioner of Internal Revenue states, in substance, that, although the claim for abatement was directed with reference to a number of items, all protests were waived at a conference held with representatives of the estate on February 14, 1922, except in regard to the value of certain real estate specified; that the evidence submitted on the part of the estate with the supplemental report of investigation from its Boston office supported the values of the real estate at which he had arrived; and that these fairly reflect its value at the date of the decedent's death. With reference to the stock of the Magee Furnace Company it stated that the contention that this was not transferred in contemplation of death, but was purchased by the decedent as a gift for his son-in-law, Robert M. Leach, was supported by the evidence which had been submitted, and that this should be excluded from the decedent's gross estate; that the evidence on file with the Bureau had led it to fix the value of the Weir Stove Company stock at $1,000 per share as of the date of the decedent's death, which value was agreed upon by the representatives of the estate at the con-

ferences mentioned. It further stated that the estate no longer protests the inclusion of this stock as a part of the decedent's gross estate. No reference is made in this letter to the alleged agreement of November 22, 1921, nor to any compromise agreement, but it clearly states that the gross estate and its value have been determined from evidence before the Bureau.

The claim for refund was filed by the estate on June 20, 1925, amounting to $49,-634.74 and interest, $10,433.39, alleging (1) that none of the gifts were made by the decedent in contemplation of death; and (2) that deduction should be made for the amount required to pay the federal estate tax. In it there was a request that an opportunity for an oral hearing in Washington be given, which was granted and August 26, 1925, fixed for this hearing.

On September 22, 1925, the Commissioner wrote to the executor as follows:

"The Bureau's records show that at your request a conference was scheduled for this case at 11 a. m. August 26, 1925. No one representing the estate appeared for the conference. The Bureau is prepared to pass upon the refund claim. This letter is to notify you that, unless the estate arranges for a final conference with the Bureau by October 15, 1925, it will be necessary to close the case in the light of all the evidence of record in the Bureau at that time."

In a letter of January 16, 1926, the Commissioner stated, in substance, that the claim for refund had been examined; that, "upon consideration of all the evidence before it, the Bureau is of the opinion that the value of the property transferred was properly included in the gross estate. * * * In view of the foregoing, your claim for refund of $60,058.03 is rejected in its entirety." The transfers here referred to were those to the wife of the executor and to Mrs. Walker, and also the stock of the Weir Stove Company included in the transfer to Robert M. Leach.

It thus appears from the conferences subsequent to the date of the alleged agreement of November 23, 1921, and from the letters of the Commissioner of Internal Revenue, that the final determination of the Bureau was not reached because of this alleged agreement, but from all the evidence obtained, including that furnished by it as a statement by the executor under oath. This agreement was not a compromise authorized by section 3229 of the Revised Statutes (Comp. Stat. 1916, § 5952 [26 USCA § 158]), because it was not assented to by the

Secretary of the Treasury as required by that section, and no other compromise is authorized by the act.

No agreement by the executor not made in accordance with this section would relieve the Commissioner from the duty cast upon him of determining the value of the gross estate from all evidence obtainable, including that furnished by the representative of the estate.

The District Court erred in holding that the alleged agreement operated as a bar to the maintenance of this action, and it is unnecessary to consider the other assignments of error.

The judgment of the District Court is reversed, and the case remanded to that court for further action not inconsistent with this opinion; the plaintiff in error to recover costs in this court.