CAMBRIDGE LOAN & BUILDING CO. v.
UNITED STATES.

K–430.

Court of Claims.

May 2, 1932.

938

Louis L. Hamby, of Washington, D. C., for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

BOOTH, Chief Justice.

The facts involved in this tax case are stipulated. The record presents but one question. The plaintiff is a domestic building and loan association, incorporated under the laws of Ohio. On September 18, 1924, the Commissioner of Internal Revenue assessed against the plaintiff income and excess profits taxes for the calendar years 1918 to 1923, inclusive, which, together with interest thereon, amounted to $16,783.97. On the same date the Commissioner also assessed against the plaintiff penalties in the total sum of $2,016.-41 for the years 1922 and 1923. The plaintiff on September 18, 1924, paid the income and excess profits taxes in the sum of $16,783.97, but did not pay the penalties assessed, i. e., $2,016.41. On September 25, 1924, the plaintiff filed with the Commissioner a claim for a refund of $16,783.97, the aggregate amount paid by it under the assessment of September 18, 1924. Plaintiff's refund claim was regular in every respect and was predicated upon an asserted right of exemption from taxation under section 231 of the Revenue Acts of 1918 (40 Stat. 1057, 1076) and 1921 (42 Stat. 253). The above sections of the Revenue Acts accomplish substantially the same exemption, and we quote but one, i. e., section 231 of the act of 1918, as follows:

"Sec. 231. That the following organizations shall be exempt from taxation under this title—* * *

"(4) Domestic building and loan associations and cooperative banks without capital stock organized and operated for mutual purposes and without profit. * * * *"

On November 26, 1924, the Commissioner allowed the plaintiff's claim in so far as the penalties assessed for 1922 and 1923 were concerned, i. e., in the sum of $2,016.41, and rejected it for the sum of $14,767.56. In other words, the Commissioner, in considering plaintiff's refund claim, deducted from the aggregate sum paid by it, i. e., $16,783.97 as income taxes, the amount of $2,016.41 assessed as penalties for 1922 and 1923, but never paid, and by proper office procedure issued a certificate of overassessment for the sum of $2,016.41.

On December 22, 1924, the plaintiff brought suit in this court (D–1083) to recover the sum of $14,767.56, alleging in its petition that this sum represented the amount

of income taxes illegally collected from it by the Commissioner under section 231 of the Revenue Acts of 1918 and 1921, supra, inasmuch as it was in fact a domestic building and loan association without capital stock and organized for mutual and not profitable purposes. This court on June 6, 1927 (63 Ct. Cl. 631), awarded the plaintiff a judgment for $14,767.56 and interest thereon as by law allowed. The case was subsequently appealed to the Supreme Court and the judgment of this court affirmed, 278 U. S. 55, 49 S. Ct. 39, 73 L. Ed. 180. While plaintiff's case D–1083 was pending in this court, but long prior to its trial and final disposition, the Commissioner forwarded to the plaintiff certificates of overassessment, "with notations thereon that said amounts of $922.05 and $1,094.36, respectively, have been abated"; each of said certificates containing an additional notation as follows:

"The amount of the overassessment will be abated, credited, or refunded as indicated below. (You will be relieved from the payment of any amount abated; if an overpayment has been made and other taxes are due, credit will be made accordingly, and any amount refundable is covered by Treasury check transmitted herewith.)"

Instead of transmitting to the plaintiff a check in payment of said overassessments, the Commissioner applied the total sum, i. e., $2,016.41, wholly in abatement of the aforesaid penalties for the years 1922 and 1923, which the plaintiff had never paid, and which by the Commissioner's own ruling should not have been paid, thereby diminishing the amount of refund to which the plaintiff was entitled under the law, i. e., from $16,783.97 to $14,767.56, leaving due the plaintiff an obvious unpaid balance of $2,016.41, for which this suit is brought.

The facts show that the error which occasions this controversy is the result of the apparent mistake committed by the Commissioner in deducting from the aggregate amount of income taxes paid by the plaintiff for the years involved the sum of $2,016.41 in abatement of penalties for the years 1922 and 1923 when the amount of the penalties had not been paid, and had theretofore been abated. What we think happened, at least we deem it a logical inference from the facts, is that the Commissioner, in consideration of plaintiff's refund claim, neglected to observe that plaintiff's income tax liability as assessed by him included two items, income tax and interest, totaling $16,783.97 and penalties amounting to $2,016.41, or a total of $18,-800.38, $16,783.97 of which amount and no greater sum was paid as income tax, and that, in issuing his certificates of overassessment for the total sum of $2,016.41, he should have denied plaintiff's refund claim in the amount of $16,783.97 instead of $14,767.56, for clearly it was his intent to deny a refund of the total amount paid by plaintiff as income taxes and allow it only as to the penalties assessed, which the Commissioner apparently believed were included in the sum paid as income taxes. It certainly would be most unusual, as well as contrary to law, to apply an overassessment in abatement of penalties which had been held by the Commissioner to constitute an overassessment. The resulting effect is that the plaintiff has been denied payment of an allowed refund claim to which it is conceded it is entitled, and the recovery of which simply accords to the plaintiff the refund of the total sum of income taxes due it under the decision of the Supreme Court. The plaintiff was right in relying upon the payment of its allowed refund claim, when it commenced suit in this court to recover $14,767.56 income taxes. Plaintiff very properly omitted any allegation in its petition in D–1083 with respect to this allowed claim; it was not involved when the litigation started, and, while the plaintiff might have amended its petition and included the same in the case when payment was refused, it was under no legal obligation so to do. A lawfully allowed refund claim is in a different status from a rejected one so far as the jurisdiction of this court in tax cases is concerned. Bonwit Teller Case, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

 It is admitted by the defendant that the plaintiff is entitled to recover, unless the doctrine of res adjudicata is applicable, and that doctrine is the single defense invoked. The findings of this court in plaintiff's case D–1083 make no mention of the amount involved in this suit, and the opinion of the court does not discuss or refer to an allowed refund claim for the sum of $2,016.41 wherein payment had been refused. The amount of the judgment awarded the plaintiff clearly indexes that it was not in any wise considered in fixing the same, and, unless the present issue is one which because of its character was judicially determined, irrespective of its inclusion or exclusion from case D–1083, the judgment then rendered is not res adjudicata. It was said by the Supreme Court in Cromwell v. County of Sac., 94 U. S. 351, 353, 356, 24 L. Ed. 195:

"The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence

actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. * * *

"It is not believed that there are any cases going to the extent that because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action."

This court in the Weisberger Case, 54 Ct. Cl. 1, 9, said: "The general rule has been stated in this court to be that parties and privies are concluded by a judgment of a court of competent jurisdiction upon every material issue clearly presented by the pleadings, tried by the court, and judgment rendered thereon. Langston's Case, 26 Ct. Cl. 256; Braden's Case, 12 Ct. Cl. 164. In California Bridge & Construction Co. v. United States, 50 Ct. Cl. 40-50, the rule is thus stated: 'The general rule is that when an action is brought in a court of competent jurisdiction, a judgment rendered thereon is conclusive in a subsequent action between the same parties or their privies upon the same subject matter in the same court or another court of concurrent jurisdiction.' And the rule of former adjudication does not apply alone to questions actually adjudicated, but it applies equally to all questions in the case which properly might have been litigated or pleaded. Northern Pac. R. Co. v. Slaght, 205 U. S. 122, 131 [27 S. Ct. 442, 51 L. Ed. 738]."

A distinct line of demarcation segregates contentions with respect to allowed tax refund claims and rejected ones. The proof to sustain one is not in all respects of the same character essential to sustain the other. Where the refund has been allowed and overassessment certificates issued, the question of payment or credit is usually put in issue; at any rate, such is the issue in this case. As to allowed claims a different statute of limitations applies and different computation as to interest provided. Wilton Lloyd-Smith, Receiver v. United States, 71 Ct. Cl. 74, 80. In the Bonwit Teller Case, 283 U. S. 258, 265, 51 S. Ct. 395, 397, 75 L. Ed. 1018, the Supreme Court said: "The government further contends that, even if the Commissioner's allowance was authorized, this suit is barred by Rev. St. § 3226, as amended. 26 U. S. C., § 156 (26 USCA § 156). It provides that no suit for the recovery of any internal revenue tax alleged to have been erroneously collected shall be begun after five years from the payment of such tax. The overpayment made was more than five years before the complaint was filed. This case is not within the clause giving two years after disallowance because here the claim was allowed. Plaintiff pleads its claim in two forms. The first is based upon the issue and delivery of the Commissioner's certificate showing plaintiff entitled to a refund in the amount specified. The second alleges an account stated showing that there is due plaintiff the amount claimed. The action is not for the overpayment of the tax in 1919, but is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought. United States v. Kaufman, 96 U. S. 567, 570, 24 L. Ed. 792; United States v. Real Estate Savings Bank, 104 U. S. 728, 26 L. Ed. 908; Bank of Greencastle's Case, 15 Ct. Cl. 225. There is no merit in the contention that the suit is barred."

The plaintiff is entitled to a judgment for $2,016.41, with interest thereon as provided for by section 177 (b) of the Judicial Code, as amended by section 615 (a) of the Revenue Act of 1928. Bonwit Teller v. United States, 52 F.(2d) 904, 72 Ct. Cl. 559. It is so ordered.