### W. J. VOIT RUBBER CORP. v. UNITED STATES.

### No. 13426–BH.

United States District Court
S. D. California, C. D.
Feb. 24, 1953.

Dempsey, Thayer, Deibert & Kumler, Los Angeles, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U. S. Attys., Eugene Harpole and Frank W. Mahoney, Special Attorneys, Bureau of Internal Revenue, Los Angeles, Cal., for the United States.

HARRISON, District Judge.

The plaintiff, taxpayer, seeks to recover excess profits taxes in the amount of $13,-011.83, alleged to have been erroneously and illegally collected with respect to taxpayer's fiscal year ending September 30, 1945. The basis of taxpayer's claim is that it has not been permitted to recover the full cost basis of certain emergency facilities, as allowed under 26 U.S.C.A. § 124(a). The taxpayer through this action is attempting to make a recovery based upon his broken promises.

Plaintiff was the owner of certain emergency facilities covered by certificates of necessity, authorizing plaintiff, pursuant to 26 U.S.C.A. § 124, to amortize its cost over a sixty month period. There was allowed a proper amortization deduction of $13,-236.87 for the taxable year 1944. Subsequently, the President proclaimed the end of the emergency as of September 30, 1945, which date coincided with the end of plaintiff's fiscal year. Plaintiff, pursuant to 26 U.S.C.A. § 124(d)(4), elected to terminate amortization as of September 30, 1945. Amortization of $32,591.90 for the taxable year 1945, calculated on the contracted period ending September 30, 1945, was allowed. Amortization for the taxable year 1944 on the basis of the shortened period amounted to $28,455.39. Since amortization allowed for the taxable year 1944 on the 60 month amortization period was only $13,236.87, plaintiff was entitled to additional 1944 amortization of $15,218.52.

This additional deduction had the effect of reducing plaintiff's excess profits tax for the taxable year 1944 by $6,097.47, for which amount it filed a claim for refund. Thereafter, a Revenue Agent made an audit and examination of the plaintiff's return for the taxable year 1944 and made the following recommendations, which were approved at hearings before the Internal Revenue Agent in Charge and the Technical Staff. The figures speak for themselves:

| | | |
|---|---|---|
| Net income disclosed by return | | $59,587.67 |
| Add: Travel expenses disallowed | $ 1,505.87 | |
| Bad debt disallowed | 7,711.11 | |
| | $ 9,216.98 | 9,216.98 |
| | | $68,804.65 |
| Deduct: Capital stock tax | $ 2,500.00 | |
| Accelerated amortization | 15,218.52 | |
| | $17,718.52 | 17,718.52 |
| Net income as adjusted by Revenue Agent in Charge | | $51,086.13 |

On the basis of the above adjustment, overassessments of normal income and excess profits taxes were shown as follows:

Normal income tax................ $3,084.22
Excess profits tax ...........:...... 711.90
                                  ─────────
Total overassessments of income
  and excess profits taxes ......... $3,796.12

As a further result of his examination, the Revenue Agent in Charge also concluded that a surtax under the provisions of Section 102, 26 U.S.C.A., should have been imposed on the taxpayer in the amount of $8,429.18. Accordingly, it. was proposed that a net deficiency in the income and excess profits taxes of plaintiff be assessed in the amount of $4,633.06.

Subsequently, plaintiff filed a protest to the proposed adjustments. At a conference with the Technical Staff that followed it was agreed that the case be disposed of on the basis of no deficiency and no overassessment for the taxable year 1944. Thus, in effect, the bureau reduced the deficiency under 26 U.S.C.A. § 102, to $3,796.12, the amount of the overassessment of income and excess profits taxes, and set off the deficiency against the overassessment.

Plaintiff, accordingly, executed Treasury Form 874, entitled, "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," which showed no deficiency and no overassessment for taxable year 1944. The form was modified by striking out a part on its face [1] and by the addition on the back of two typewritten paragraphs.[2]

The agreement was accepted on behalf of the Commissioner. As a consequence of this agreement of no deficiency and no overassessment for the taxable year 1944, plaintiff's claim for refund of excess profits tax for that year was formally rejected.

On the theory that the formal denial of its claim for refund amounted to a deprivation of amortization on the sum of $15,-218.52 allocable to its taxable year 1944, the taxpayer next filed a claim for refund for the taxable year 1945, asserting that its basis for amortization in 1945 should include the $15,218.52 of amortization allegedly disallowed in 1944. An additional deduction of $15,218.52 for the taxable year 1945 would reduce plaintiff's excess profits and income tax liability by $13,011.-83, as compared with a tax saving of only $6,097.47 should that deduction be taken for the taxable year 1944. This difference might serve to explain why plaintiff seeks to shift his deduction to 1945 rather than sue for refund of 1944 taxes overpaid. At any rate, for reasons best known to it, plaintiff made its claim for refund of 1945 taxes, the claim was disallowed, and this action for refund was brought.

It is apparent that the transactions relative to the 1944 return determine the merits

---

[1]. "Note.—The execution and filing of this waiver at the address shown in the accompanying letter will expedite the adjustment of your tax liability as indicated above. It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code, ~~and does not, therefore, preclude the assessment of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due,~~ nor does it extend the statutory period of limitations for refund, assessment, or collection, or collection of the tax."

[2]. "This offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment is subject to assessment by or on behalf of the Commissioner of Internal Revenue, on the basis of the adjusted liability as hereinabove proposed, and is to take effect as such only from the date said adjusted liability is accepted by or on behalf of the Commissioner as a basis for closing the case, and if not thus accepted will have no force or effect.

"If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened nor shall any claim for refund be filed or prosecuted in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or. of an important mistake in mathematical calculations; and the taxpayer also agrees upon request of the Commissioner to execute at any time a final closing agreement as to the tax liability on the foregoing basis, for said year under the provisions of Section 3760 of the Internal Revenue Code."

of the plaintiff's claim. This action is a thinly veiled attempt to escape the consequences of an agreement intended by the parties to settle the tax liability of plaintiff for the taxable year 1944. As is typical in cases of this sort, the action was not brought until after the running of the statute of limitations on the Commissioner's right to assess or collect a deficiency for the year to which the agreement pertained.[3] Thus the taxpayer enjoys the benefit of the agreement at the same time it seeks indirectly to renege on its part of the bargain.

■ Amortization allowed, or allowable, in one year may not, under Section 124(a), 26 U.S.C.A., be deducted in a subsequent year. Section 124(a) reads, in applicable part:

"General rule. Every person, at his election, shall be entitled to a deduction with respect to the amortization of the *adjusted basis* (for determining gain) of any emergency facility (as defined in subsection (e) ), based on a period of sixty months." (Emphasis supplied.)

Section 113(a), 26 U.S.C.A., defines the basis (unadjusted) of property for determining gain or loss as cost, with certain exceptions not here applicable.

Section 113(b), 26 U.S.C.A., defines the adjusted basis referred to in Section 124 (a):

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) General rule. Proper adjust-

ment in respect of the property shall in all cases be made:—

\* \* \* \* \* \*

"(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws. \* \* \*"

The foregoing code sections clearly require reduction of basis by the amount of amortization allowed or allowable.[4] It is idle for plaintiff to insist that an agreement which, in effect, allowed a deduction for the disputed additional amortization is ineffective to require reduction of plaintiff's basis by the amount of amortization thus allowed. The figures of the Revenue Agent in Charge show beyond a doubt that the extra amortization claimed by plaintiff was allowed in the taxable year 1944. The extra amortization entered into the computation of net income for that year, and plaintiff received a refund in the form of a credit against section 102 taxes. A claim for refund may be allowed by means of crediting the overassessment against a deficiency.[5] The agreement, founded on an acceptance of these computations, implicitly allowed the additional amortization for the taxable year 1944, and plaintiff would, by its promise not to reopen the case or file or prosecute a claim for refund based on matters settled by the agreement, appear to be precluded from taking the same deduction in the taxable year 1945.

However, there is considerable doubt that a final closing of a tax dispute can be effected except by the ponderous procedures provided by 26 U.S.C.A. § 3760, relating to closing agreements, and Sec. 3761, relating to compromise agreements.[6]

3. There remains for the Government only the defensive right of recoupment. Bull v. United States, 1934, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421; 12 A.L.R. 2d 824.

4. United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054; United States Industrial Alcohol Co. v. Helvering, 2 Cir., 1943, 137 F.2d 511.

5. See Bonwit Teller & Co. v. United States, 1930, 283 U.S. 258, 265, 51 S.Ct.

395, 75 L.Ed. 1018; followed in Cambridge Loan & Building Co. v. United States, 1932, 57 F.2d 936, 74 Ct.Cl. 500.

6. Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L. Ed. 379; Leach v. Nichols, 1 Cir., 1927, 23 F.2d 275; L. Loewy & Son v. Commissioner of Internal Revenue, 2 Cir., 1929, 31 F.2d 652; Payson v. Commissioner of Internal Revenue, 2 Cir., 1948, 166 F.2d 1008; Bank of New York v.

These statutory methods for the administrative settlement of tax cases require the approval of the Secretary, the Under Secretary, or an Assistant Secretary of the Treasury before agreements made thereby become final. Such approval was not obtained in this case.

The Supreme Court, however, in Botany Worsted Mills v. United States,[7] left open the possibility that in some circumstances a non-statutory form of closing agreement might become binding on the parties by estoppel. Estoppel was one ground of decision in Baldwin v. Higgins [8] and in Guggenheim v. United States,[9] where taxpayers were held bound by the terms of waiver and consent agreements.

But it is not necessary to find the agreement binding in order to preclude plaintiff's recovery in this case. An action brought to recover taxes erroneously paid is predicated on the same equitable principles that underlie an action in assumpsit for money had and received.[10] The plaintiff must recover by virtue of a right measured by equitable standards, and it is therefore open to the defendant to show any state of facts which, according to these standards, would deny the right. [11] These general principles have been applied to prevent avoidance of waiver and consent agreements in situations similar to that before this court.[12]

The taxpayer has made no effort to prove to this court that the proposed deficiency under 26 U.S.C.A. § 102, was erroneous. That proposed deficiency more than offset plaintiff's claim for refund for the taxable year 1944. The taxpayer, having proved no net overassessment for the taxable year 1944, has proved no disallowance of amortization for that period to justify an increase of amortization for taxable year 1945.

Not only is there no equitable basis for taxpayer's claim, but it is without legal foundation. The disputed amortization is conceded to have been allowable in taxable year 1944. This is sufficient to dispose of the case. In addition, amortization for the taxable year 1944 was shown, by the figures of the Agent in Charge, to have been allowed in full. The allowance of additional amortization for taxable year 1944 is in no way dependent on the binding effect of the waiver and consent agreement. That agreement merely reflects the allowance of the deduction. Plaintiff's basis in 1945 may not be increased by an amount of amortization not only allowable but also allowed in 1944, and it is therefore entitled to no relief in this court.

The defendant is entitled to judgment of dismissal and is directed to submit proposed findings and judgment in conformity with this opinion within ten days from date hereof.

United States, 3 Cir., 1948, 170 F.2d 20; Brast v. Winding Gulf Colliery Co., 4 Cir., 1938, 94 F.2d 179; Joyce v. Gentsch, 6 Cir., 1944, 141 F.2d 891; Knapp-Monarch Co. v. Commissioner of Internal Revenue, 8 Cir., 1944, 139 F.2d 863; Hughson v. United States, 9 Cir., 1932, 59 F.2d 17; Davidson v. United States, D.C.E.D.Wis., 1944, 58 F.Supp. 481; Steiden Stores v. Glenn, D.C.W.D.Ky., 1950, 94 F.Supp. 712; See also Gutkin, Informal Federal Tax Settlements and their Binding Effect, 4 Tax L.Rev. 477 (1949); and Note, Finality of Administrative Settlements in Tax Cases, 57 Harv. L.Rev. 912 (1944).

7. Note 6, Supra.

8. 374 CCH Par. 9434, affirmed on other grounds, 2 Cir., 1938, 100 F.2d 405.

9. 1948, 77 F.Supp. 186, 111 Ct.Cl. 165, certiorari denied, 1949, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441, rehearing denied, 1949, 336 U.S. 911, 69 S.Ct. 513, 93 L.Ed. 1075.

10. United States v. Jefferson Electric Co., 1934, 291 U.S. 386, 402-403, 54 S.Ct. 443, 78 L.Ed. 859.

11. Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; Lewis v. Reynolds, 1932, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293. See Van Antwerp v. United States, 9 Cir., 1937, 92 F.2d 871, 873-874.

12. See Baldwin v. Higgins, supra, Note 8 (alternative holding); Rubel Corporation v. Rasquin, 2 Cir., 1943, 132 F.2d 640, 643-644 (alternative holding), affirming D.C.E.D.N.Y., 1942, 43 F.Supp. 111.