## UNITED STATES *v.* KAUFMAN.

A brewer paid to the collector of internal revenue $100 for special tax on his business from May 1, 1873, to April 30, 1874, for which a special tax stamp was given him. At the close of the year, it was found, that he had manufactured less than five hundred barrels, and the Commissioner of Internal Revenue allowed his claim for the excess paid by him. Upon proper application to the treasury, payment of the amount so allowed was refused. *Held,* 1. That the allowance made by the commissioner, unless it be impeached in some appropriate form by the United States, is conclusive. 2. That the Court of Claims has jurisdiction of a suit by the brewer against the United States to recover the amount, and that he is entitled to judgment therefor.

APPEAL from the Court of Claims.

This was an action against the United States to recover the amount which the commissioner of internal revenue had certified to the comptroller of the treasury that the claimant was entitled to have refunded to him the value of returned special tax stamps, after deducting therefrom five per cent, as provided by law.

The facts are stated in the opinion of the court.

There was a judgment against the United States, who thereupon appealed.

*The Solicitor-General* for the United States.
*Mr. P. E. Dye, contra..*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

Two questions are presented in this case:—

1. Whether the Court of Claims has jurisdiction of a suit, brought to recover an amount allowed by the Commissioner of Internal Revenue, upon the claim of a brewer for an excess of special tax stamps used by him in payment of the special tax upon his business at the beginning of the year, when, at the close, it was found that he had manufactured less than five hundred barrels, and the payment of the amount so allowed has been refused upon proper application at the treasury.

2. Whether the facts found are sufficient to warrant the judgment.

The Court of Claims has jurisdiction of " all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States." Rev. Stat., sect. 1059.

All special taxes imposed by law, accruing after April 30, 1873, must be paid by stamps denoting the tax. Rev. Stat., sect. 3238; 17 Stat. 402, sect. 3. A brewer is required to pay a special tax of $100, " provided that any person who manufactures less than five hundred barrels a year shall pay the sum of $50 " (Rev. Stat., sect. 3244; 14 Stat. 117); and he cannot engage in or carry on his business until he has paid the tax. Rev. Stat., sect. 3232; 14 Stat. 113. " The Commissioner of Internal Revenue may, from time to time, make regulations, upon proper evidence of facts, for the allowance of such of the stamps issued under the provisions of this chapter, or any internal revenue act, as may have been spoiled, destroyed, or rendered useless or unfit for the purposes intended, or for which the owner may have no use, or which, through mistake, may have been improperly or unnecessarily used, or where the rates of duties represented thereby have been paid in error or remitted; and such allowance shall be made either by giving other stamps in lieu of the stamps so allowed for, or by repay-

ing the amount or value, after deducting therefrom, in case of repayment, the sum of five per cent, to the owner thereof; . . ." Rev. Stat., sect. 3426; 13 Stat. 294, sect. 161; 17 id. 257, sect. 41.   Under the authority of this act regulations were adopted, with the approval of the Secretary of the Treasury, June 12, 1873, among which is the following: "Claims for allowance on account of special tax stamps will not be considered in cases where any business has been done thereunder, except in the case of a brewer who has paid a special tax stamp of $100, but who, at the close of the special tax year, is found to have produced less than five hundred barrels.   In such case, the excess paid by him, less five per cent, will be allowed." Int. Rev. Circular, No. 109.

It would seem to be clear from this statement that the allowance of a claim by the Commissioner of Internal Revenue, under the authority of these statutes and treasury regulations, raised an implied promise on the part of the United States to pay any amount that might actually be due the claimant under such circumstances, and certainly such a claim would be " founded upon a law of Congress."

We know it was held in *Nichols* v. *United States* (7 Wall. 122), that the Court of Claims did not have jurisdiction of a suit to recover back duties upon imported goods illegally assessed, and that the same rule applied to internal revenue cases where the decision of the commissioner upon appeal was adverse to the claimant.   In such cases, a special remedy is given by suit against the collector, if the necessary steps are taken to secure the right to sue at all.   The reason is, that as the liability is one created by statute, the special remedy provided by the same statute is exclusive.

But here the case is different.   The claim has been presented to and allowed by the proper officer.   The claimant has pursued the statutory remedy to the end.   He is satisfied with the decision that has been given, and insists upon the payment which the government has undertaken to make.   No special remedy has been provided for the enforcement of the payment, and consequently the general laws which govern the Court of Claims may be resorted to for relief, if any can be found applicable to such a case.   This is upon the principle that " a lia-

bility created by statute without a remedy may be enforced by an appropriate common-law action." *Pollard* v. *Bailey*, 20 Wall. 527. And as against the government there are no common-law actions: any appropriate action within the scope of the jurisdiction of the Court of Claims may be resorted to, unless specially prohibited. Here the right has been given, and a liability founded upon a law of Congress created. Of such liabilities the Court of Claims has jurisdiction, and no other remedy has been provided.

Do the facts found warrant the judgment?

These facts are, in effect, that the claimant, who was a brewer, on the third day of May, 1873, paid to the internal revenue collector of his district $100, as the special tax on his business for one year, from May 1, 1873, to April 30, 1874, for which a special tax stamp was given him by the collector; that, May 6, 1874, he applied to the Commissioner of Internal Revenue to refund $50 of this amount, as he had only manufactured three hundred and fifty barrels during the year; that evidence in support of this application was submitted, and the commissioner on the 5th of July, 1874, certified to the Comptroller of the Treasury that the claimant had returned to him an internal revenue special tax stamp of the face value of $50, for which he was entitled to have refunded him $47.50; and that on the same day the commissioner notified the claimant of the allowance of his claim to that amount, for which a certificate had been lodged with the Comptroller of the Treasury.

It is now insisted that the finding of an allowance by the commissioner is not enough, and that the court should have gone behind the allowance, and found the facts in respect to the original claim. Such, we think, is not the law. To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the government, by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a *prima facie* liability of the government; but when submitted, and when

allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached. When, therefore, the court found the adjudication against the government, without impeachment, the liability to pay was established. We do not decide that in the Court of Claims the adjudication of the commissioner may not be impeached, but we do decide that, until impeached, it is binding, and that the affirmative of the impeachment is upon the government.

It is said, however, that the finding does not show that the government has refused payment of the allowance. In *Clyde* v. *United States* (13 Wall. 38), we held that a rule of the Court of Claims was void which required " that, where the case was such as is ordinarily settled in an executive department, the petition should show that application for its allowance had been made to that department, and without success, and the decision thereon; " but that case was not one in which the action was based upon the decision of the department. Here it is. The foundation of the suit is the refusal of the government to pay a claim allowed by an officer authorized to repay moneys overpaid under certain circumstances, but who can only make payment through the proper disbursing agents of the treasury. The officer has done all he can do. He has made the allowance, and certified it to the Comptroller of the Treasury for payment. It does not appear in express terms that those charged with the duty of actually making the payment are in any respect at fault. For all that is shown in the finding, if the claimant had called upon the treasurer, he would have received his draft on the treasury, and, when that was properly presented, the money. The case is not materially different from what it would have been if he had procured his draft, and sued upon it without having first presented it for payment. Under such circumstances, clearly there could have been technically no refusal to pay until there had been a demand, or something which was an equivalent. Here, an application for payment was made to a proper officer of the department. He performed his duty by certifying his allowance, and sending it forward in the regular course of business through the department for payment. The adjustment was complete, and, for all that appears, nothing more was necessary for the claimant to do except to call at the treas-

ury and get his money. The presumption under such circum
stances is that payment would have been made upon proper
demand.

This record, however, does show that the claim was allowed
July 3, 1874, while the suit was not commenced until June 25,
1875; and the trial below evidently proceeded upon the theory
that no such objection to a recovery existed. In the opinion, it
is said that the " comptroller did not pass the claim, and the
allowance made by the commissioner has never been paid."
So, too, in other cases where this is referred to, it is described
as one in which " the comptroller refused to pass the account,
and interposed objections which, if final, would thwart the
action of the commissioner, and prevent the execution of the
provisions of the regulations." *Boughton's Case*, 12 Ct. Cl.
336. And in the argument here, on behalf of the appellee, it
is said " that the Assistant-Attorney-General admitted on the
trial in the court below the fact of the refusal of the United
States to pay the allowance made by the commissioner in
favor of the claimant," and " that it was on the theory of
the case that the defendants had refused to make payment of
the allowance that the court entertained jurisdiction." Under
these circumstances, we think it clear that this point was con-
ceded below, and that it ought not to be considered here.

*Judgment affirmed.*