BichaedsoN, J.,
delivered the opinion of the court:
This is an action of contract upon an allowance in writing, made and certified by the Commissioner of Internal Bevenue, for the refund and payment back of a tax illegally assessed upon and paid by the claimants. The Commissioner acted under the following provisions of the Bevised Statutes:
“Sec. 3220. The Commissioner of Internal Bevenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all j)en allies collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected. * * *
“ Sec. 3228. All claims for the refunding of any internal tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, must be presented to the Com- • missioner of Internal Bevenue within two years next after the cause of action accrued.« * * *
By these provisions Congress has conferred upon the Commissioner of Internal Bevenue the power and duty of passing upon the merits and determining the validity of all claims for refund of taxes therein specified. His decisions thereon are in the nature of awards made by arbitrators.
There are ' several classes of cases in which like jurisdiction over the adjustment of demands against the government is intrusted by law to certain executive officers. We have here *229 tofore bad occasion to consider some of those cases, and have held that until the designated officer bad exercised bis power and decided in favor of such a claim, the United States are not bable to an action thereon. But when the officer wbo is clothed with that power has allowed the claim and made his certificate to that effect, a new cause of action arises by implied contract or statute upon that certificate, into which the original demand is merged, and may be prosecuted to judgment in this court, if for want of an appropriation or other cause its payment is refused at the Treasury. These views have been sustained by the Supreme Court. (Kaufman’s Case, 11 C. Cls. R., 659, affirmed on appeal, 96 U. S., 567; Boughton’s Case, 12 C. Cls. R., 330; Campbell’s Case, ib., 470; Bradley’s Case, ib., 579; DeCelis’s Case, ib., 135; McKnight’s Case, ib., 308; Woolner’s Case, ib., 355; Ramsay’s Case, ib., 367.)
After a claimant has applied to the Commissioner for the refund of a tax alleged to have been illegally assessed and wrongfully paid, it is for him to lay before that officer all the evidence upon which he relies to prove the facts; and it then becomes the duty of the Commissioner to weigh the evidence, to exercise his best and impartial judgment upon it, and to decide whether or not the claim shall be allowed. From the Commissioner’s decision there is no appeal to an'y other executive officer, on the one side or the other. If the decision is against the claimant, his legal remedy in the Treasury Department is exhausted, and he must submit to the judgment as a final disposition of his claim, unless the claim be such that he can maintain an action upon it against the collector. (Rev. Stat., § 629, fourth par., §§ 3226, 3227; Cheatham et al. v. United States, 92 U. S., 85.) If the decision is in his favor, and the Commissioner makes and certifies to an allowance, the liability of the United States becomes fixed and the claimant’s right to payment established. He is not required to follow the certificate through all the ramifications of the Treasury Department and to prove the original claim anew, before all or any of the officers of the department through whom the certificate must pass in the process of accounting, in order to the drawing of a warrant and the issuing of a check on the Treasurer for its payment.
The statute above cited authorizes the Commissioner himself to refund and pay back all taxes illegally assessed or collected; *230 and wore it not for the fact that the money received from internal-revenue taxation is covered into the Treasury, instead of being passed to the credit of the Commissioner, he might pay the allowances made by him directly and without certifying them to the accounting officers. The latter course is made necessary by the requirements of the Constitution and laws relating to the drawing of money from the public Treasury. (McKnight's Case, 13 C. Cls. R., 292.)
The First Comptroller or the Secretary of the Treasury may refuse to sign a warrant when no appropriation is made by Congress, since that is within their constitutional and statute authority and duty. Such action, however, would not aifect the merits of the allowance, and the claimant’s right to payment would still remain, although he would be compelled to seek an appropriation from Congress or the judgment of this court in order to obtain the money found to be due him. (Con., Art. 1, § 9; Rev. Stat., §§ 248, 269; Collins’s Case, ante.) Neither of those officers has authority to review the evidence upon which the Commissioner acted in making such allowances, nor to overrule his findings in matters which the law intrusts to his individual judgment.
Nor is the claimant required to re-establish his original claim in this court when suit is brought upon the Commissioner’s allowance. He may rest his case upon the certificate of the Commissioner until it is impeached.
In Kaufman’s Case, which was an action in this court upon an allowance made by the Commissioner of Internal Revenue for a special tax stamp returned, the Chief Justice of the Supreme Court, in the opinion delivered by him affirming on appeal the judgment of this court, said:
“It is now insisted that the finding of an allowance by the Commissioner is not enough, and that the court should have gone behind the allowance and found the facts in respect to the original claim. Such, we think, is not the law. To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the government by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a prima facie liability of the. government; but when submitted, and when allowed upon the adjudication, the liability is complete *231 until in some appropriate form it is impeached. When, there* fore, the court found the adjudication against the government, without impeachment, the liability to pay ivas established. We do not decide that in the Court of Claims the adjudication of the Commissioner may not be impeached, but we do decide tliat until impeached it is binding, and that the affirmative of the impeachment is upon the government.” (96 U. S., 570.)
There is no doubt that an allowance by the Commissioner may be impeached anywhere for fraud, for that avoids all contracts into which it enters as against the party defrauded; or for want of jurisdiction; or for a mistake apparent upon the certificate of allowance; or generally for such other irregularities in the proceedings as would .avoid an award made by arbitrators so far as the proceedings are similar; but not for what might seem to others to be a mere mistake of judgment in the weighing and giving force and effect to evidence.
In the present case the only attempt on the part of the defendants to impeach the Commissioner’s allowance is an effort to show that the original claim was not presented to him within two years after it accrued, as required by the statute and by the regulations prescribed by the Secretary of the Treasury. That was one of the facts in the case which the Commissioner was to determine. The statute requires no specified form of application or presentation of a claim. An informal appeal to the Commissioner, which is satisfactory to him and is accepted as such, is a sufficient presentation of a claim to lay the foundation of a more formal application to be made in conformity to the regulation, when required by the Commissioner, as was done in the present case. (14 Opin. Attys. Gen., 615.) There was some evidence before him that the claimant’s application was made within the time required. At the time of the payment of this tax the claimant entered a protest against its legality. A protest has never been held by the Commissioner of Internal Bevenue to be necessary as a condition precedent to the right of a claimant to appeal to him and to obtain a refund of taxes illegally assessed and collected. If this protest was in writing and was forwarded to the Commissioner, he may have found from its language that it was made as, and was sufficient for, a primary application or presentation of a claim for refund. There was an affidavit, also, of an internal-revenue agent that within the two years’ limitation the claimant’s cashier did make, sign, and swear before him to a formal application which he, *232 then an assistant assessor, forwarded to the Internal Eevenue Burean through the proper channel, and this was supported by the affidavit of the cashier. What evidence there was before him as to whether or not it reached his office in due time or what other evidence'he might have acted upon does not appear. The Commissioner allowed the claim, coming to the conclusion that it was presented within the time required, and we are not prepared to say that we should come to a different determination if it were within our jurisdiction to review his action on that evidence. We hold, however, that the Commissioner’s decision on that point upon evidence before him, in the absence of fraud or irregularity, was conclusive, aud cannot be set aside in this court. (Woolner’s Case, 13 C. Cls. E., 355.)
The judgment of the court is that the claimant recover the sum of $136.55.