COLUMBIA RIVER PACKING CO. v. TALLANT.

(Circuit Court, D. Oregon. August 4, 1904.)

No. 2,764.

1. ACCOUNT STATED—IMPLIED ASSENT OF PARTY TO BE CHARGED—DENIAL OF LIABILITY.

Where one to whom a statement of account is presented disputes its correctness or denies his liability for any reason, whether valid or not, it will not support an action as an account stated.

At Law. Trial to the court.

Teal & Minor and W. C. Bristol, for complainant.

Dolph, Mallory, Simon & Gearin and J. H. & A. M. Smith, for defendant.

BELLINGER, District Judge. Prior to July 1, 1902, Tallant and the Columbia River Packing Company, the plaintiff, operated certain seining grounds in the Columbia river. Kendall was at the time, and still is, president of the company. The joint enterprise came to an end prior to July 1, 1902. Kendall testifies that thereafter the packing company and Tallant had an accounting as to the seining business, at which Tallant and witness were present; that they had the books of the company, and went "mutually over the different sides of the account between them," and that there was found an indebtedness due from Tallant of $4,785.46; that the result of that accounting was, by agreement between Kendall and Tallant, placed in the form of a paper writing before the 1st of July, 1902; that there were several of these papers, all original. The paper relied upon as constituting this account proves to be a report made to Kendall by G. W. Langdon, who describes himself as "certified public accountant." It is addressed to Mr. F. P. Kendall, President Columbia River Packing Company, San Francisco, Cal. It contains eight schedules, designated A to H, inclusive. Schedule A is a statement of all debit and credit balances upon the ledger. Schedule B is a statement of assets and liabilities. Schedule C is a statement of profit and loss account. Schedule D is a corrected statement of assets and liabilities, derived from the books, the bills, statements, vouchers, and from Mr. Wilson, who had spent much time and labor upon the books and papers of Tallant & Kendall. Schedule E is a corrected statement of profit and loss. Schedule F is a statement of Tallant's account. Schedule G is a statement showing the increase in the assets of the firm, Tallant's share of this increase, the amount that

¶ 1. See Account Stated, vol. 1, Cent. Dig. § 18.

he paid on account of this increase, and the amount due from him. Schedule H is a statement of correction to the benefit of Tallant. Kendall testifies that one of these original papers was conveyed to Tallant on or about July 1, 1902. This document, prepared by the certified public accountant, forwarded to Tallant, constitutes the accounting testified to by Kendall. Neither Kendall nor Tallant was present when it was prepared, nor did they mutually or singly, or at all, go over the different sides of the account, in its preparation, or in the ascertainment of the facts embodied in it, as Kendall testifies. The sum of the matter is that Kendall had an expert go over the books and accounts of the parties, and report the assets, profits, liabilities, etc. That report showed that Tallant was indebted to the business in the sum for which the action was brought. That report was forwarded to Kendall in San Francisco, who forwarded a copy of it by mail to G. C. Fulton, who was presumably, from the terms of the letter from Fulton to Tallant announcing his receipt of the report, to endeavor to settle the matter with Tallant "amicably and peaceably in some manner." Kendall says he mailed Tallant the account. He cannot say whether he sent a letter with the account; that he has made an examination to find such a letter, but has been unable to find it. Tallant says that the only advice or letter he received in relation to the account of June 28th was the letter from Mr. Fulton, and this must be assumed to be the truth. On April 10, 1902, Kendall wrote a letter from San Francisco to Tallant at Astoria, in which he said, in reference to the matter in dispute: "When I go to Oregon, will take the books up with me, and we will try to get things shaped up." There was no further communication between the parties until the Fulton letter. Tallant testifies that in response to Fulton's letter he called upon the latter, who handed him the report, and, after some conversation respecting it, asked: "Do you dispute it? I have got to know, because Mr. Kendall says if you don't settle this, I am to bring proceedings." Tallant answered: "Mr. Fulton, the quicker you bring proceedings the better it suits me. I dispute everything. I certainly dispute everything." There is nothing in contradiction of this statement as to what took place between defendant and Fulton, and I do not doubt its truth. It is in keeping with the sending of the account to the lawyer, with "instructions," and I am convinced that Kendall's statement that he mailed this account to Tallant from San Francisco has reference to the account mailed to Fulton. His tendency to state inferences for facts is shown in his statement that he and Tallant had an accounting, both being present; that they had the books of the company; that they went mutually over the different sides of the account between them; and that the result of that accounting was, by agreement between them, placed in the form of a writing, when, as a matter of fact, it appears from his own particular examination that this so-called "accounting" consisted in the preparation of a report, made by an accountant at the instance of Kendall, in the absence of both the parties, and sent by the expert to Kendall at San Francisco, who thereafter mailed it to Tallant, without receiving any answer as to its receipt or acceptance by the latter. It is not necessary to discuss the effect of such a transaction. The expert's report, forwarded to Kendall, and thereafter sent to his attorney at

Astoria, does not constitute an account stated. Nor does the fact, if it is the fact, that a copy of this report was sent to Tallant, alter the case. There is nothing to show that Tallant made any promise in respect to this report, or that he had any knowledge respecting it, except that derived from Fulton. So far from promising to pay the amount shown to be due from him by the report, when interviewed by Fulton, he disputed the correctness of the report, and declared his intention to resist payment. Furthermore, it appears that Tallant disputed liability on this account upon the ground that in the purchase of the seining grounds in question by Kendall and Sanborn the latter assumed to pay this account. If it is true, as contended by plaintiff, that the purchase by Kendall and Sanborn was not for the plaintiff company, and if, as must follow, the assumption by the purchasers to pay would not discharge the obligation from Tallant to the company, nevertheless Tallant's contention in the premises at the time is fatal to the account stated. Such an account involves an agreement to pay, express or implied. The fact that there was contention on Tallant's part, however groundless, that the sale was to the company, or for its benefit, and that the assumption of the account was that of the company, negatives the implication of such a promise by him. Accordingly, it has been held that when one to whom an account is rendered admits the correctness of the items, but denies his liability, insisting that some other person is justly chargeable, and ought to pay, the account does not become an account stated. 1 Am. & Eng. Ency. Law (2d Ed.) 446, citing Ryan v. Gross, 48 Ala. 370.

The findings and judgment will be in accordance with this opinion.