## DAUBE v. UNITED STATES.
### No. L–106.

Court of Claims.
July 5, 1932.

LITTLETON, Judge, dissenting.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

The plaintiff herein, during all the period involved in this case, was a member of the partnership of Westheimer & Daube, doing business in Ardmore, Okl., and on February 28, 1917, filed his individual income tax return for the calendar year 1916 with the proper collector of internal revenue.

On April 1, 1918, plaintiff filed his individual income tax return for the year 1917 with the collector, and on June 16, 1919, filed his income tax return for the calendar year 1918 with the collector, showing a tax liability for that year of $72,807.41, which was assessed and paid voluntarily without protest in the year 1919. Plaintiff also filed his individual income tax return for the calendar year 1920 with the collector on June 15, 1921.

On April 22, 1922, the plaintiff executed a waiver of assessment for the years 1916 and 1917, which was also signed by the Commissioner, and in the same month the copartnership of which plaintiff was a member also executed a waiver of assessment for the year 1917, which was signed by the Commissioner. On November 10, 1923, the Commissioner mailed to the plaintiff a letter with a "statement" attached which showed that he had found that additional taxes were due from the plaintiff as follows: For the year 1916 in the sum of $2,019.25; for the year 1917 in the sum of $4,449.50; for the year 1920 in the sum of $4,808.49. Said statement showed also that there had been an overassessment

for the year 1918 in the amount of $22,151.88, and for the year 1919, $2,628.26, and, further, that there was altogether a net overassessment of $13,502.90. A copy of this letter and the "statement" attached thereto is attached to the stipulation of the parties marked Exhibit A, and made part hereof by reference.

On January 26, 1924, the Commissioner signed an assessment list for the district of Oklahoma in which appeared the additional assessments hereinabove referred to, and on January 31, 1924, the Commissioner signed a schedule of overassessments, which schedule showed an overassessment of taxes in favor of plaintiff for the year 1918 of $22,151.88, and for the year 1919 of $2,628.26. This schedule was sent to the collector with instructions to examine the accounts of the taxpayer and apply the overpayment as a credit against any taxes due, entering the same on the schedule, which the collector did, and, after signing the schedule, returned it to the Commissioner of Internal Revenue. It also showed that $11,277.24 of the overpayment of 1918 taxes was credited against additional assessments for 1916, 1917, and 1920 taxes. At the same time, the collector made out a schedule of refunds and credits dated February 27, 1924, which he forwarded to the Commissioner along with the schedule of overassessments. This schedule listed as refundable $10,874.64 out of the taxes paid for 1918, and $2,628.26 out of the taxes paid for 1919. The Commissioner signed an approval of this schedule and an authorization of the payment thereof on March 29, 1924, notwithstanding the fact that he had on file directions to apply certain overpayments to the additional assessment against the partnership which he had previously informed plaintiff and the partnership would be made, and which he did make on the same day (March 29, 1924) in the sum of $53,012.47 for 1917. Pursuant to this authorization, a check for $13,502.90, the amount of the overassessment, was issued on April 23, 1924, and forwarded to the collector for delivery to the plaintiff. The collector did not deliver the check, but returned it. The evidence does not show directly why the collector returned the check, but it appears that on February 23, 1924, plaintiff and the other members of the partnership of Westheimer & Daube had individually signed and mailed to the Commissioner an instrument which contained, among other things, an agreement between themselves with reference to the disposition of overassessments to which they might be individually entitled, and further authorized and requested the Commissioner, "* * * to apply and credit the amount refundable to each and all of the individual members of said partnership for 1918 against the additional tax assessed against said partnership for the year 1917 and this agreement to be taken and accepted as full and complete authority therefor."

In a prior paragraph of this agreement it recited that: "* * * The said partnership of Westheimer & Daube has been assessed an additional excess-profits tax of $53,012.47 as shown by commissioner's letter dated February 11, 1924." A copy of this agreement is contained in the stipulation signed by the parties in paragraph 15 thereof, and is made a part hereof by reference. The collector was advised of this agreement.

After the return of the check, the Commissioner, on July 28, 1924, wrote again to the collector instructing him to apply the sum of $10,874.64, the balance of the overassessment for 1918, and also the sum of $2,628.26, overassessment for 1919, upon the taxes outstanding against the partnership for the year 1917, and the collector made such application accordingly. A copy of this letter is set out in paragraph 16 of the stipulation of the parties, and is made a part hereof by reference.

On February 26, 1930, the plaintiff filed separate claims for refund for the years 1916, 1917, and 1918. These claims were in the amounts of $2,019.25, $4,449.50, $6,468.75, and $13,502.90, respectively. The amount last above stated included the overassessment for 1918 of $10,874.64 and the overassessment for 1919 of $2,628.26 hereinabove specified. No action has been taken by the Commissioner of Internal Revenue upon any of the claims thus filed.

John E. Hughes, of Chicago, Ill. (William Cogger, of Washington, D. C., on the brief), for plaintiff.

G. Aaron Youngquist and Charles B. Rugg, Asst. Attys. Gen. (Lisle A. Smith and E. E. Angevine, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The Commissioner of Internal Revenue, having found that plaintiff had overpaid his individual income tax for the years 1916, 1917, 1918, 1919, and 1920, credited the amount of such overpayments upon a defi-

ciency in taxes of Westheimer & Daube, a firm of which the plaintiff was a member. There is no dispute as to the overpayment, the deficiency in the tax of the partnership, or the credits made by the Commissioner thereon, but plaintiff, claiming that the action of the Commissioner in making these credits was illegal, brings suit to recover the amount of the overpayments and credits. Since the filing of the petition, the plaintiff has abandoned his claim for the credits made from overpayments on the taxes of 1916, 1917, and 1920. The issue now is with reference to the credits made out of overpayments for 1918 and 1919.

With reference to the credits made of overpayments of the taxes for these two years, the contention for plaintiff is that the credits were made after the expiration of the period of the statute of limitations for the collection of taxes for the years on which these two overpayments were made. It is contended on behalf of the defendant that the credits were made before the expiration of the statutory limitations, and that in any event the plaintiff is not entitled to recover for the reason that no application for a refund was filed within the time prescribed by law.

On the question of the statute of limitations, the cases of Florsheim Bros. Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, and Northwestern Barb Wire Co. v. United States, 42 F. (2d) 579, 70 Ct. Cl. 329, are cited on behalf of defendant to show that section 278 (d) of the 1926 act (26 USCA § 1061 and note) permitted the collection of the partnership tax at any time within six years from the time of the additional assessment against the partnership, which was on March 29, 1924. But in those cases it appeared that the statute of limitations had not expired when the act of 1926 went into effect.

In the case at bar, the parties agree that the period of limitation for the collection of the partnership taxes for 1917 was extended by the so-called "unlimited" waiver which the partnership had filed to April 1, 1924, when it expired. Thus the period of limitation ended prior to the enactment of the 1924 act, which in subdivision (d) of section 278 (26 USCA § 1061 note) authorized the collection to be made within six years from the assessment of the tax. But in subdivision (e) of the same section, there was a provision that the section should not authorize the collection of a tax if at the time of the enactment of the act such assessment was barred by the

statutory period of limitations properly applicable thereto. We are of the opinion that neither the Revenue Act of 1924 nor that of 1926 is of any help to defendant's case. See Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255.

The defendant contends that both of the claims of the plaintiff now at issue are barred by reason of the fact that no claim for refund as to either of them was filed until more than four years after the payment of the sum which is sought to be recovered. Plaintiff does not concede this to be the fact as to the claim for refund of the taxes of 1918, but argues that if it be a fact it is immaterial for the reason, as plaintiff claims, that one basis of the suit is the rendition of an account stated on which a suit may be commenced within the time of the rendition of the account notwithstanding the provisions with reference to the filing of claims for refund. In support of this position the plaintiff cites the case of Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 75 L. Ed. 1018.

The facts in the case present a very unusual situation and are quite different from those in the Bonwit Teller Case, supra, where only one taxpayer was involved. It appears that on November 10, 1923, the Commissioner mailed to the plaintiff a "statement" which showed that he had found that additional taxes were due from plaintiff for the years 1916, 1917, and 1920, and that for the years 1918 and 1919 there had been an overassessment, in each case specifying the amount, and that there was altogether a net overassessment of $13,502.90.

On January 26, 1924, the Commissioner signed an assessment list for the district of Oklahoma upon which appeared the additional assessments hereinabove referred to, and on January 31, 1924, the Commissioner signed a "schedule of overassessments," which schedule showed an overassessment of taxes in favor of plaintiff for the year 1918 of $22,151.88 and for the year 1919 of $2,628.26. This schedule was sent to the collector with instructions to examine the accounts of the taxpayer and apply the overpayment as a credit against any taxes due, entering the same on the schedule, which the collector did, and, after signing the schedule, returned it to the Commissioner of Internal Revenue. It then showed that $11,277.24 of the overpayment of 1918 taxes was credited against additional assessments of 1916, 1917, and 1920 taxes. At the same time, the collector made out a schedule of refunds and credits dated

February 27, 1924, which he forwarded to the Commissioner along with the schedule of overassessments. This schedule listed as refundable $10,874.64 out of the taxes paid for 1918, and $2,628.26 out of the taxes paid for 1919. The Commissioner signed an approval of this schedule and an authorization of the payment thereof on March 29, 1924, notwithstanding the fact that he had on file an agreement and directions of plaintiff to apply certain of his overpayments to the additional assessment against the partnership which he had previously informed plaintiff and the partnership would be made. On the same day (March 29, 1924) the Commissioner made an additional assessment of taxes in the sum of $53,012.47 for 1917 against the partnership.

The authorization of the payment of the overassessment signed by the Commissioner was clearly made by oversight, but a check for $13,502.90, the amount of the overassessment, was issued pursuant thereto on April 23, 1924, and forwarded to the collector for delivery to the plaintiff. The collector, however, returned the check without delivering it. It is not material to this branch of the case, but it is evident this was done because the collector knew that about February 23, 1924, plaintiff and the other members of the partnership of Westheimer & Daube had individually signed and mailed to the Commissioner an instrument which constituted an agreement between themselves with reference to the disposition of overassessments to which they might be individually entitled, and further authorized and requested the Commissioner, " * * * to apply and credit the amount refundable to each and all of the individual members of said partnership for 1918 against the additional tax assessed against said partnership for the year 1917 and this agreement to be taken and accepted as full and complete authority therefor."

In a prior paragraph of this agreement it recited that: " * * * The said partnership of Westheimer & Daube has been assessed an additional excess-profits tax of $53,012.47 as shown by Commissioner's letter dated February 11, 1924."

After the return of the check, the Commissioner wrote again to the collector giving him instructions as to the distribution of the amounts of the overassessment, and accordingly, on August 7, 1924, the collector applied the sum of $10,874.64, the balance of the overassessment for 1918, and also the sum of $2,628.26, overassessed for 1919, upon the taxes outstanding against the partnership for the year 1917.

All this seems to have been perfectly satisfactory to the plaintiff until long afterwards. A few days before the 6-year limitation on suits had expired for bringing suits against the government, this action was commenced, apparently on an afterthought that there was a chance to recover back the amount so paid on the ground that the application had been made after the expiration of the period of limitations.

We think the plaintiff has misapprehended the principles of law applicable to the overpayment of 1918 as we consider those principles to be. It is still contended on the part of the plaintiff that defendant had no right to apply the amount of any overassessment against plaintiff upon the partnership taxes after the period of limitation had expired, and there is much discussion as to the effect of the provisions of the revenue act with reference to the application of "credits" upon a tax when the period of limitation for its collection has expired. As we view these provisions they were only intended to control when the "credit" was made upon other taxes of the same party whose taxes for a particular year were overpaid and have no application when an overpayment by one taxpayer is "credited" upon the taxes of another. The law applicable to this part of the case is no different than it would be if the plaintiff had directed the amount of any refund coming to him to be applied on the taxes of John Jones or some other taxpayer. True, the plaintiff was a member of the partnership against which an additional assessment had been made, and these taxes could be enforced against him by proper proceedings, but they had not been assessed against him. They were assessed against another taxpayer, and money used to pay them pursuant to the joint agreement went to the benefit of his partners as well as himself. When one taxpayer authorizes the payment of money due him upon the taxes of another, a situation results which is not covered by the revenue statutes, but simply by the general law. In this particular case the application of the overpayment was made after the statute of limitations had run, but the statute then in force did not extinguish the debt due from the taxpayer. It merely abrogated the remedy. It is not necessary to decide whether the plaintiff could have recalled his direction to so apply the money at any time before the application was made. He did not do so, and when once the application had been made in accordance with plaintiff's directions the government could retain the money, provided

there was any consideration for the transaction. The fact that the partnership still owed the money and the debt still existed was, as we think, sufficient consideration, and therefore the overpayment for 1918, which was covered by the instrument to which we have referred, cannot be recovered by the plaintiff regardless of the time when the claim for refund was filed or account stated was rendered. In fact, the schedule never having been presented to plaintiff, there was no occasion that he should indicate dissent or approval. When the 1918 refund was finally allowed, a complete agreement existed between the Commissioner and the plaintiff as to what should be done with the overassessment; the Commissioner having previously stated what he intended to do, and the plaintiff not only accepted the proposition of the Commissioner, but directed the application in accordance therewith.

There remains the sum of $2,628.26, overpayment for the year 1919, to which no reference is made in the agreement and directions given by plaintiff, which we have considered above. The defendant contends that, no claim for refund of the 1919 taxes having been filed, the deficiency assessment was properly made against the partnership within the time covered by the waiver filed by the partnership, that it had the right to apply the overpayment of plaintiff's taxes for 1919 on the partnership assessment, and that in any event the application for payment of refund is now barred by the statute of limitations. The petition recites that a Treasury check in the amount of $13,502.90, drawn to the order of plaintiff, was on August 7, 1924, applied by the collector against the additional assessment against the copartnership for the year 1917, and a letter from the Treasury Department reciting that this check had been returned by the collector and had been "deposited as a repayment to the appropriation from which drawn" is attached to the petition. Neither the collector nor the Commissioner applied the check which had been issued in favor of the plaintiff in the manner recited by the petition. It was simply turned back into the Treasury, and the transaction has been so fully explained in connection with the 1918 taxes that we need not recite the particulars any further. The petition does allege that on a schedule dated March 29, 1924, approved by the Commissioner, a credit was made of $4,449.50 against an alleged additional tax for the year 1917 out of the overpayments for 1918, and avers that such credit was without "warrant in law." But this has no reference to any overpayment of 1919. In argument

counsel for plaintiff contend that under the holding in the case of Bonwit Teller & Co., supra, he is entitled to recover that portion of his taxes for 1919 which was applied on the partnership taxes. Plaintiff's claim is not definitely stated in the petition, but it is evident that he cannot recover even for the 1919 overpayment under the special provisions of the revenue act, for the reason that no claim for refund was filed. If he recovers at all, it must be upon the theory that there was an account stated between the parties by virtue of the schedule signed by the Commissioner March 29, 1924, which, it is urged, under the Bonwit Teller Case, gave the plaintiff six years in which to commence suit under the general statute applicable to claims against the government. In considering whether there was an account stated between the parties upon which plaintiff may rest his case, it becomes necessary to consider the fundamental rules upon which such a case may be based.

The main principles with reference to an account stated are well settled, and, so far as we are able to ascertain, no court has ever varied from them. In a general way, it is said, "An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance." 1 C. J., p. 678, § 249, citing numerous authorities. It is of course necessary that some kind of a statement of the account must be rendered, Id., p. 679, § 250; and there must be "an admission by one party of the correctness of the balance struck by the other, or some other evidence to show that the party sought to be charged has by his language or conduct admitted the correctness of the account." Id., § 251. Of special importance is the rule that, "To constitute an account stated each party must understand the transaction as a final adjustment of *the respective demands* between them taken into consideration in the accounting." (Italics ours.) Id., p. 683, § 259. Also, that "To constitute an account stated, the correctness of the balance must receive the assent, express or implied, of both parties. A certain fixed sum must be admitted by the one party to be due to the other, and where there are mutual or cross demands, the parties must come to an agreement as to the allowance or disallowance of the items composing the account; there must be an adjustment, a balance struck, and an assent

to the correctness of the balance." Id., p. 685, § 263. The right of action arises from the implied promise to pay which is based on this agreement.

It is not absolutely necessary that the account should be stated or the assent thereto given in writing. It is sufficient if it is so communicated that the minds of the parties can come to an agreement as to the balance due one or the other, and do come to such an agreement; but if the minds of the parties do not meet, there is no account stated.

It has also been held that "where an account rendered by one party to another is relied on by the latter to charge the former as regards items in favor of the latter, the account is to be taken as an entirety, and the account is evidence in favor of the former as to items therein in his favor." Id., p. 681, § 252.

"The parties can not state an account by agreeing to part of the items, and leaving the others open for future adjustment or litigation." Id., p. 684, § 260, citing New York Fire Underwriters v. Boughan (Sup.) 97 N. Y. S. 402, holding that the test of an account stated is that the minds of the parties met as to the amount due.

Nor does it make any difference that a claim made in the account may be groundless, although if any part of the claim is disputed so that the balance stated is not admitted it does not become an account stated. Columbia River Packing Co. v. Tallant (C. C.) 132 F. 271. It is contended in argument on behalf of the defendant that the partners were individually liable for the partnership taxes and that this gave defendant the right to credit the plaintiff's overassessment for 1919 on the partnership taxes, but it is not necessary to pass on the question thus raised, as our decision does not depend upon its determination.

It thus appears that an account stated necessarily includes all the claims that are made by the respective parties at the time of its presentation or rendition; that it applies not only to what may be admitted by one party, but to cross-demands made by the other which have no direct or even no indirect connection with the claim admitted by the other party, and the foundation of a suit thereon is that the balance is struck and agreed upon between the parties on their respective claims. The admission of one item in the account of the transactions between the parties offset by another item will not support an action on an account stated as to the item admitted, although it may constitute evidence of the correctness thereof in an action otherwise commenced. On the other hand, the presentation of an account admitting an item in favor of the party presenting it, but offsetting it by a claim upon an item against the party to whom the account was presented and striking a balance may, if no objection is made within a reasonable time, become an account stated for the balance so struck.

The authorities supporting these principles are so numerous that it is impractical to cite them within the reasonable limits of an opinion, and the decisions are so uniform and so universally accepted in their holdings that we see no necessity for making further reference to any of them.

It is not necessary in this case to decide whether all the principles laid down above apply to the facts in the case. The first question to be determined is whether a statement of any kind was presented by defendant to plaintiff which showed the condition of the account between the parties, for the rule is absolute that, unless some kind of an account or statement is presented or communicated by one party to the other which shows the balance due on the accounts between the parties, there is no foundation for a claim upon an account stated. Indeed this is so obvious that it would not need to be stated if it were not necessary in considering the evidence in this case, which fails to show the presentation of any account or instrument showing any amount due to plaintiff, or any agreement as to the balance due.

The only communication that the plaintiff received from the defendant which in any way pertains to the amount due is the so-called thirty-day letter written by the Deputy Commissioner to the plaintiff and dated November 10, 1923. There are several statements in this communication that we think show plainly that it cannot be considered as an account stated.

In the first place, the letter refers to a statement which is made part thereof, which clearly shows that nothing that was in the letter was intended as a final statement of the amount due on the account between the parties, or even any items thereof. This statement made it plain that taken as a whole the communication was merely a recital of what was proposed to be done in the future, and that it did not admit that any amount whatever was due plaintiff or would be due on the account between the parties when the proposed action should be taken. In fact, the action which made the overassessment

valid, and the assessment of the deficiency tax against the partnership were both done or made some time after the letter was written, and the whole proposition and the statement were all predicated upon the concluding words of the statement, which are as follows: "The overassessment shown herein will be made the subject of a certificate of overassessment which will reach you in due course through the office of the collector of internal revenue for your district. If the tax in question has not been paid, the amount will be abated by the collector. If the tax has been paid, the amount of overpayment will first be credited against unpaid income tax for another year or years and the balance, if any, will be refunded to you by check of the Treasury Department. *It will thus be seen that the overassessment does not indicate the amount which will be credited or refunded since a portion may be an assessment which has been entered but not paid.*" (Italics ours.)

It will be observed that by this statement the taxpayer is not told that he will be paid the amount of any overpayment, but that such overpayment will be credited on unpaid tax for other years, and it should be noted in this connection that it makes no difference as to whether the defendant had the right to credit this overpayment on the unpaid taxes of the partnership, as the defendant at the time was setting out its claims, and even if they were wrongfully made they constituted no admission that anything was due the plaintiff. Besides this, the plaintiff was specially warned by the portion of the statement italicized above that the overassessment should not be taken as any indication of the amount which would be credited to him or refunded. This language was evidently intended to make it clear to him that the letter and the statement constituted no acknowledgment of any indebtedness, and the subsequent proceedings on the part of the plaintiff show that he understood the statement just as it read.

It is true that by some oversight the Commissioner subsequently prepared a letter stating the amount of the overassessment, which, with a check for the amount thereof, was sent to the collector. But the collector, perceiving the error, did not forward the check or the letter to the plaintiff, but returned it to the Commissioner. Nothing was received by the plaintiff which pertained to the condition of the account between plaintiff and defendant except the letter of November 10, 1923, to which reference has been made above.

Although the letter last above referred to was the only communication from defend-

ant to plaintiff with reference to the balance due on the accounts between the parties, there seems now to be some claim that the schedule of refunds and overassessments signed by the Commissioner on March 29, 1924, constituted an account stated. No such claim is set up by counsel for plaintiff in argument, unless it be by a mere citation of the Bonwit Teller Case, supra. In any event, this schedule of refunds and credits was not presented to plaintiff. When it was forwarded to the collector he must have seen at once that an oversight had occurred. It not only was at variance with what the Commissioner had originally written plaintiff would be done, but if taken in the sense now claimed for it on behalf of the plaintiff it was absolutely contrary to the express directions which plaintiff himself had given to the Commissioner, and of which the collector was advised. The collector therefore sent this schedule with the check for $13,502.90 back to the Commissioner, and the Commissioner then directed the collector to credit the amount thereof against the 1917 assessment against the partnership of Westheimer & Daube. For so much of this credit as came out of the overassessment for 1918 ($10,874.64), the Commissioner had, as we have heretofore shown, express directions from the plaintiff to apply it on the partnership tax; for the remainder ($2,628.26), he did not have any directions from the plaintiff as to how it should be applied, but it will be observed in this connection that the plaintiff had made no claim for its refund.

This muddle, which arose from the oversight of the Commissioner, resulted in what the evidence shows to have been an entirely erroneous statement of refunds and credits. By express direction of the plaintiff, the greater part of this refund was, as we have already shown, to be applied on the partnership taxes. We think the evidence shows clearly that the schedule was issued by mistake, but in any event it utterly fails to comply with the requisites of an account stated. The plaintiff had never revoked his directions as to what should be done with the overassessment for 1918, and the minds of the parties had come to no agreement in relation thereto, or as to what should be done with the overassessment for 1919 with reference to which plaintiff had made no claim.

It should also be observed that the petition does not set forth a cause of action based upon an account stated. There is nothing in it referring to any statement of account received from the defendant. On the contrary,

the action is based upon the allegation that the overpayments mentioned therein were illegally credited on the tax of Westheimer & Daube, for the reason that the statute of limitations had run against the assessment and collection thereof at the time the credit was made, and that claims have been filed for the refund thereof.

So far as the claim made by plaintiff that he is entitled to recover upon an account stated is concerned, the case is altogether different from that of Bonwit Teller & Co., supra. In that case a second count was set up in the petition which asked recovery on a certificate issued and delivered to the plaintiff stating the amount due, while in the case at bar, as we have already seen, there is no allegation in the petition with reference to anything of the kind. No question was raised either in this court or in the Supreme Court on the submission of the Bonwit Teller Case as to whether the certificate upon which the second count of the petition was based constituted an account stated and the argument was confined to other points involved. Consequently neither court passed upon the question as to whether this certificate was sufficient to constitute an account stated in favor of the plaintiff, and it will be noted in this connection that the authorities cited as supporting a right to bring suit thereon all refer to cases where a certificate had been issued by the proper authorities allowing plaintiff's claim, authorizing its payment, and plaintiff brought suit for the amount directly stated by the certificate to be due him. In our judgment, the opinion of the Supreme Court is no authority for holding that the certificate issued in the Bonwit Teller Case was an account stated. Be this as it may, we have, as we think, a firm ground for our decision on other matters. The letter in the Bonwit Teller Case contained no warning to the plaintiff that nothing was decided thereby. It advised the plaintiff that a definite sum would be refunded or credited. In the case at bar, the 30-day letter in its final concluding statement notified the plaintiff that the whole matter was still undecided. In this connection it should be said that we do not think the fact that more than one year was taken into consideration in considering the accounts of the respective parties has anything to do with the principles relating to an account stated. Certainly no authority can be given for any such position. The underlying principle of an account stated is that it states the balance existing between the two parties and shows to which of the two parties this balance is due.

The cases that have been cited by counsel for plaintiff and others that have been called to our attention do not support the theory that an account stated was rendered in the case at bar. In each and all of them a claim was filed by the plaintiff for refund of the amount illegally collected. The claim as filed was approved in the full amount thereof, and the approval certified by the proper officer. When a plaintiff presents a claim and it is allowed in full by the proper officer, manifestly the minds of the parties have met upon an account stated, and a promise to pay the amount agreed upon is implied. In the case at bar no claim whatever was filed for a refund of the overpayment on the taxes of 1919. In the case of Bonwit Teller & Co., supra, a claim was also filed by the plaintiff, and there was a certification. But cases where the plaintiff presents a claim to the government which is allowed and certified are no authority for upholding the action in such a case as the one at bar where no claim has been filed, no statement made by one party to the other, and there has been no meeting of the minds of the parties or agreement thereon, or any facts shown in evidence from which an agreement might be implied. An unbroken line of authorities, we think, should not be overruled in order to enable the plaintiff to recover a payment which in justice and equity was owing to the government.

The plaintiff's petition must be dismissed and it is so ordered.

BOOTH, Chief Justice, and GREEN, WILLIAMS, and WHALEY, Judges, concur.

LITTLETON, Judge (dissenting).

I am unable to agree with the conclusion that the filing of a claim for refund prior to the allowance of an overpayment by the Commissioner of Internal Revenue is necessary to enable a taxpayer to maintain a suit to recover an amount duly allowed by the Commissioner, pursuant to the provisions of the statute, during the period within which he may do so without the filing of a claim. The cause of action as stated in the petition is based wholly upon the Commissioner's allowance of overpayments of $10,874.64 and $2,628.26 for 1918 and 1919, respectively. This allowance, which was made on March 29, 1924, was timely as to both years. Plaintiff had filed a timely claim for refund for 1918 which was allowed by the Commissioner. He filed no claim for refund for 1919, but the Commissioner allowed an overpayment of $2,628.26 for that year within the period of

limitation in which he was required by the statute to examine the return and to refund or credit any overpayment found to have been made.

This suit is not based upon a claim for refund for 1918 or 1919, but is grounded upon the Commissioner's allowance of March 29, 1924, as evidenced by the schedule of refunds, form 7805–A, approved by him on that date in the amounts sought to be recovered. There was no disallowance of a claim for refund, and the two-year limitation provided in section 3226, R. S. (26 USCA § 156 and note), for suits upon rejected claims, does not apply. The Commissioner determined and allowed the amounts stated in the petition, and the petition was filed within six years from the date on which the amounts were allowed. The suit was therefore timely instituted.

In so far as concerns the Commissioner's allowance of the amounts involved and the nature of the plaintiff's cause of action, as stated in his petition, I can see no essential difference between this case and the case of Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S. Ct. 395, 397, 75 L. Ed. 1018. In that case the time for allowing an overpayment without a claim had expired, but the Commissioner held that a certain document filed by the taxpayer was sufficient to constitute a claim for refund, and upon the basis thereof he determined and allowed an overpayment of $10,866.43; his allowance was accomplished in the same way in which the overpayments involved in this case were allowed. Instead of refunding the overpayment allowed, however, the Commissioner credited $9,846.06 thereof against an additional tax due by Bonwit Teller & Co. for the year ending January 31, 1917; said credit having been made at the same time that he allowed the overpayment. At the time the credit was made, however, the collection of the tax due for 1917 was barred by the statute of limitation. The balance of the overpayment of $1,462.99 was refunded to the plaintiff and a certificate of overassessment was mailed to it by the collector disclosing the amount allowed, the amount credited, and the amount refunded. The taxpayer applied to the Commissioner for payment of that portion of the amount allowed which had been credited against the barred tax for 1917. The Commissioner refused, and the company brought suit in this court to recover that portion of the overpayment for 1919 credited after the expiration of the statute of limitation. The illegality of the credit was conceded, but the defendant insisted in the Su-

preme Court that the suit was barred, inasmuch as it was not instituted within five years from the payment of the tax for the year with respect to which the Commissioner had made an allowance. The court said: This case is not within the clause giving two years after disallowance, because here the claim was allowed. * * * The action is not for the overpayment of the tax in 1919 but is grounded upon the determination evidenced by the certificate issued by the Commissioner May 12, 1927. Upon delivery of the certificate to plaintiff, there arose the cause of action on which this suit was brought." The plaintiff in this case bases his suit upon the Commissioner's allowance of the amounts sued for, as evidenced by the schedule of refunds approved March 29, 1924. The determination and allowance by the Commissioner, pursuant to the mandate of the statute, of an amount due a taxpayer for a particular taxable year, before the expiration of the time within which he may make such allowance, is of the same force and effect as an allowance made by him in a case where the taxpayer filed a claim. It does not appear in this case whether a certificate of overassessments for 1918 and 1919 was delivered to the plaintiff, but I think this is unimportant. The plaintiff received notice of the amounts allowed for 1918 and 1919. The action of the Commissioner is determinative of whether the suit is for an alleged overpayment based upon a disallowed claim, or for a stated amount duly and legally allowed with respect to which the liability of the government is complete. United States v. Kaufman, 96 U. S. 567, 570, 24 L. Ed. 792; United States v. Real Estate Savings Bank, 104 U. S. 728, 26 L. Ed. 908; First National Bank of Greencastle v. United States, 15 Ct. Cl. 225.

An allowance by the Commissioner of an overpayment in respect of the tax for a particular taxable year may not, strictly speaking, be an account stated as that term is generally defined in relation to transactions between private parties. However, in view of the manner in which the statute requires the Commissioner to decide with respect to the liability of the government and the taxpayer, and the time within which he may act, makes his adjudication and allowance of an amount due the taxpayer, where there is no legally enforceable liability of the taxpayer to the government, the equivalent of an account stated, and a binding obligation of the United States. A suit thereon may therefore be instituted within six years after the cause of action accrues. Such allowance is prima

facie evidence of the amount due, and the burden is on the government of showing fraud or mistake.

In the Kaufman Case, the suit was based upon the decision of the Commissioner allowing the claim. The court held that the foundation of the suit was the refusal of the government to pay a claim allowed by an officer authorized to repay moneys overpaid under certain circumstances. It appeared that Kaufman applied to the Commissioner for a refund of $50, and submitted evidence in support of his application; that the Commissioner thereafter allowed the claim and held that Kaufman was entitled to a refund of $17.50, and advised the taxpayer of the allowance made. Subsequently payment of the amount allowed was refused on the ground that the claim for refund had not been filed in time. The court said: "To say the least, the allowance of a claim under this statute [3426, R. S.] is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake. It is not the allowance of an ordinary claim against the government, by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. * * * When submitted, and when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached. When, therefore, the court found the adjudication against the government, without impeachment, the liability to pay was established."

United States v. Savings Bank, supra, was a similar case in which the Commissioner allowed an overpayment of tax, payment of which was later refused on the ground that the claim therefor had not been filed within two years, as required by section 3228, R. S. (26 USCA § 157 and note). The court held that the allowance by the Commissioner was equivalent to an account stated, and binding on the United States, until in some appropriate form it was impeached for fraud or mistake, and that, if not paid on proper application, an action might be maintained on it in the Court of Claims, because it raised an implied promise on the part of the United States to pay; that if the officers of the department refused to pay the claim after it had once been allowed by the Commissioner, the allowance might be used as the basis of an action against the United States in the Court of Claims, where it would be prima facie evidence of the amount due, and put on the government the burden of showing fraud or mistake. To the same effect is First National Bank of Greencastle v. United States,

supra. In this case plaintiff received information that the amounts had been allowed and that they had been credited against an additional tax due by the partnership of Westheimer & Daube for 1917. Thereafter plaintiff made application for the payment to him of the amounts allowed in respect of excess payments of tax for 1918 and 1919 on the ground that the credit made was barred by the statute of limitation, and therefore illegal. Payment of the amounts allowed was refused. These facts bring the case within the rule laid down in the cases cited above.

The Bonwit Teller Case is authority for the proposition that the binding effect of the Commissioner's allowance of an overpayment for a particular year is not affected by the fact that there may be an unpaid tax liability for another year which cannot be legally collected. In determining whether an allowance of an overpayment should be made for a particular taxable year, the Commissioner cannot be governed by the fact that the taxpayer may not have paid the full amount of tax due for another taxable year. The statute is mandatory in its provision that the Commissioner shall determine the correct amount of tax for each year. When he makes an allowance of an overpayment within five years after the return was due, there is an implied promise to pay, notwithstanding the taxpayer has filed no claim for refund. See section 252 of the Revenue Act of 1921 (42 Stat. 268). He is required by the statute to credit the excess payment to any tax that may be then due from the taxpayer for any other taxable period. But he cannot apply the allowed overpayment as a credit if the period of limitation within which he may make collection of the tax due for the other year has expired. If no tax is due by the taxpayer, or if the outstanding tax for another taxable year cannot legally be collected, because barred by the statute of limitation, the statute requires that the amount allowed "shall be immediately refunded to the taxpayer."

The liability of the taxpayer and the question whether he owes an additional tax or is entitled to a refund must be determined on an annual basis. In Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 152, 75 L. Ed. 383, the court said: "The net result of the two years, if combined in a single taxable period, might still be a loss; but it has never been supposed that that fact would relieve him from a tax on the first, or that it affords any reason for postponing the assessment of the tax until the end of a lifetime, or for some other indefinite period, to

ascertain more precisely whether the final outcome of the period, or of a given transaction, will be a gain or a loss." If, therefore, the government was without authority under the revenue statute to apply all or any portion of the amounts allowed by the Commissioner in respect of the plaintiff's tax for 1918 and 1919 as a credit against a tax due by the partnership, there was an implied promise to pay the amount allowed, which was binding on the United States. Upon the refusal of the officials to pay such allowance, it constituted a proper basis of an action against the United States.

On the merits I concur in the conclusion reached in the majority opinion to the extent that it holds that the plaintiff is not entitled to recover the amount of $10,874.64 allowed by the Commissioner for 1918. In view of plaintiff's agreement which the Commissioner had before him at the time he made the allowance for 1918, that "The Commissioner of Internal Revenue is hereby authorized and requested to apply and credit the amount refundable to each and all of the individual members of said partnership for 1918 against the additional tax assessed against said partnership for the year 1917, and this agreement to be taken and accepted as full and complete authority therefor," the tax of the partnership for 1917, to the extent of the overpayment allowed for 1918, was satisfied and discharged when the Commissioner signed the schedule of refunds, form 7805–A, on March 29, 1924. This action of the Commissioner was taken within the period of limitation as extended by the waiver within which he could collect by credit the additional tax due by the partnership for 1917. At the time the Commissioner signed the schedule allowing $10,874.64 for 1918, that amount legally belonged to the United States under his agreement and direction that it be retained in partial satisfaction of the liability of the partnership. The Commissioner's action in this case was not controlled by the credit provisions of the statute and the regulations, but was governed by plaintiff's agreement, the subject-matter of which was the satisfaction of the 1917 tax of the partnership. It was not the usual claim for credit for 1918. The plaintiff filed with his agreement a claim for refund for 1918 which protected his right to secure an allowance thereof beyond the period within which the Commissioner could make an allowance without a claim. In the circumstances it was not necessary so far as 1918 was concerned that the Commissioner take the formal steps usually taken in making a credit of an overpayment by the taxpayer against a tax due by him for another taxable year. Meticulous compliance with formalities customarily followed in making a credit is not necessary in every case. It is enough that the action taken is sufficient to accomplish a credit. Compare Royal Bank of Canada v. United States, 44 F.(2d) 249, 70 Ct. Cl. 663. In the usual case, the collector of internal revenue, in making his report to the Commissioner pursuant to the directions appearing upon the schedule of overassessments, in respect of the tax of a particular taxpayer for certain taxable years, is not permitted to include in such report a statement of the account of another and different taxpayer. The Commissioner might have instructed the collector at the time the schedule of overassessments was transmitted to him to examine the account of the partnership for 1917 and make appropriate entries in the schedule of refunds and credits concerning the account of the plaintiff and the partnership, and to distribute the overassessments according to the status of those accounts; however, in view of plaintiff's agreement, it was not necessary that he do so. It seems to be conceded by plaintiff that had the Commissioner so instructed the collector he would have no cause of action in view of the approval of the schedule of refunds on March 29, 1924. The language of plaintiff's agreement, however, made the Commissioner's action of March 29, 1924, effective as a credit of the amount allowed for 1918 against the tax due by the partnership. The letter of July 28, 1924, from the Deputy Commissioner of the accounts and collection unit of the bureau to the collector, authorizing him to make appropriate entries in his records satisfying the partnership's liability for 1917 to the extent of $10,874.64, was not therefore the allowance of the credit. The credit had already been legally accomplished, and these instructions related only to matters of bookkeeping by the collector. Cf. Meyersdale Fuel Co. v. United States, 44 F.(2d) 437, 70 Ct. Cl. 765. As to the year 1919 however, the instructions contained in this letter constituted the only affirmative act by the Commissioner toward crediting the allowed overpayment of $2,628.26 against the tax due by the partnership. On the date the letter was written the collection of the tax for 1917 was barred.

The majority opinion denies recovery of the amount of $2,628.26, allowed by the Commissioner for 1919 on the ground that the Commissioner's allowance did not constitute an obligation of the United States, and that

the suit is prohibited by section 3226, R. S. (26 USCA § 156 and note), since plaintiff filed no claim for refund for 1919. I dissent from this conclusion for the reasons hereinbefore stated. Plaintiff did not file a claim for refund for 1919; however, the Commissioner allowed the overpayment of $2,628.26 for that year within the period of limitation within which he could do so without a claim. The return for 1919 was filed June 19, 1920, and there is no claim by defendant that it was due earlier. There was apparently an extension of time to file. The Commissioner's allowance, therefore, which is conceded to have been correct, was binding on the United States. The year 1919 was not included in plaintiff's agreement with reference to the satisfaction of the partnership tax, and the action of the Commissioner on March 29, 1924, did not therefore constitute a credit of the amount allowed plaintiff for 1919 against the tax due by the partnership. The time within which he could legally have credited this overpayment against the partnership's tax expired April 1, 1924. I am of the opinion that judgment should be entered in favor of plaintiff for $2,628.26, with interest as provided in section 177 of the Judicial Code, as amended by section 615 (a) of the Revenue Act of 1928 (28 USCA § 284).